**LaSHAWN A., et al., Appellees,**

v.

**Marion S. BARRY, Jr., et al., Appellants.**

No. 94–7044.

United States Court of Appeals, District of Columbia Circuit.

Argued In Banc May 8, 1996.

Decided July 9, 1996.

Donna M. Murasky, Assistant Corporation Counsel, argued the cause, for appellants. With her on the briefs, were Charles F. Ruff, Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel. Garland Pinkston, Jr., Principal Deputy Corporation Counsel at the time the briefs were filed, and Vanessa Ruiz, Assistant Corporation Counsel, entered appearances.

Marcia R. Lowry, New York City, argued the cause, for appellees. With her on the brief, were Craig R. Levine, New York City and Arthur B. Spitzer, Washington, DC. Christopher T. Dunn, Washington, DC, entered an appearance.

A. Duncan Whitaker, Washington, DC, and Suzan J. Aramaki, were on the brief, for amicus curiae Jerome G. Miller, as General Receiver.

Before: EDWARDS, Chief Judge, WALD, SILBERMAN, BUCKLEY, WILLIAMS, GINSBURG, SENTELLE, HENDERSON, RANDOLPH, ROGERS, and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge RANDOLPH.

Concurring opinion filed by Circuit Judge SILBERMAN.

Dissenting opinion filed by Circuit Judge WILLIAMS, in which Circuit Judge HENDERSON joins.

RANDOLPH, Circuit Judge.

In this ongoing litigation over the District of Columbia's foster care system, we granted rehearing *in banc* to decide whether one panel of this court may reconsider a prior panel's decision directing the district court to exercise pendent jurisdiction in the case. The answer is no.

## I

In 1989, plaintiffs brought this class action on behalf of the abused and neglected children who rely on the District of Columbia's foster care system. They alleged that the defendants—the mayor and other high-level District officials—were responsible for widespread violations of their rights under the United States Constitution, various federal statutes, and a long list of local laws. Two weeks of trial testimony revealed the District of Columbia's deficient and inept administration of its foster care system. The testimony, and more than a thousand admissions of fact by the District, showed that District officials had consistently failed to carry out responsibilities imposed on them by federal and local laws. *LaShawn A. v. Dixon*, 762 F.Supp. 959, 960, 986–87 (D.D.C.1991).

The district court reached the "inescapable conclusion" that the District's foster care system complied with neither "federal law, District law, [n]or, for those plaintiffs in the District's foster care, the United States Constitution." *Id.* at 960–61. The District's administration of its foster care system violated numerous provisions of the Adoption Assistance and Child Welfare Act of 1980, 42 U.S.C. §§ 620–627 and §§ 670–679, and the Child Abuse Prevention and Treatment Act, 42 U.S.C. §§ 5101–5106.[1] The Adoption Assistance Act, the court held, conferred upon the children rights that were privately enforceable under 42 U.S.C. § 1983, which the District had violated by depriving the children of those rights. 762 F.Supp. at 988–90. The district court also found that the District's operation of its foster care system violated numerous provisions of the District's own Prevention of Child Abuse and Neglect Act of 1977, D.C. Law 2–22 (Sept. 23, 1977) (codified as amended at D.C.CODE ANN. §§ 2–1351 to –1357, §§ 6–2101 to –2107, §§ 6–2121 to –2127, and §§ 16–2351 to –2365); the Youth Residential Facilities Licensure Act of 1986, D.C. Law 6–139 (Aug. 13, 1986) (codified as amended at D.C.CODE ANN. §§ 3–801 to –808); and the Child and Family Services Division Manual of Operations (Sept.1985). The District's obligations

1. Specifically, the court found the District in violation of the following requirements imposed upon recipients of federal funding for child welfare programs: 42 U.S.C. § 5106a(b)(2) (requiring prompt investigations into reports of abuse or neglect and necessary action to protect welfare of abused or neglected children), 762 F.Supp. at 968–70, 42 U.S.C. § 5106a(b)(3) (requiring demonstration of program to ensure effective treatment of child abuse and neglect cases), 762 F.Supp. at 970, 42 U.S.C. § 671(a)(15) (requiring provision of services to enable a child for whom a report has been made to remain in the home or, if removal is necessary, to enable the child to return home as quickly as possible), 762 F.Supp. at 970, 42 U.S.C.

§ 672(e) (mandating that a child return home within 180 days unless a judicial determination has been made that foster care placement is in the child's best interests), 762 F.Supp. at 971, 42 U.S.C. § 675(5)(A) (requiring procedures to assure children are placed in least restrictive settings), 762 F.Supp. at 971, 42 U.S.C. § 675(1) (requiring timely preparation of case plans containing specific information), 762 F.Supp. at 972–73, 42 U.S.C. § 675(5)(B) (requiring review of child's status at least every six months), 762 F.Supp. at 974; and 42 U.S.C. § 627(a)(2)(A) (requiring operation of information system from which status, location and goals for placement of all foster care children may be readily determined), 762 F.Supp. at 976–77.

under its own laws parallel the requirements of federal law; indeed the District law requirements are, in many respects, more stringent than those in the corresponding federal statutes. Analogizing the rights of children in foster care to rights of those involuntarily committed, *LaShawn*, 762 F.Supp. at 992, the district court ruled that the District's laws conferred liberty and property interests, protected under the Fifth Amendment, on the children in the custody of the District's foster care system, *id.* at 994, and that the District had violated § 1983 by depriving the children in foster care of these constitutionally protected interests. 762 F.Supp. at 998.

The parties worked out a remedial order to correct deficiencies in the District's administration of its foster care system, and the district court entered it.

In the remedial order, the District specifically reserved the right to appeal the district court's liability ruling. The District invoked that right almost immediately, contending before this court (1) that the district court erred in finding that the administration of the District's foster care system violated the Fifth Amendment, and (2) that the intervening decision in *Suter v. Artist M.*, 503 U.S. 347, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992), precluded any private cause of action under § 1983 or federal child welfare statutes. A unanimous panel of this court held, however, that it was unnecessary to reach those "complex constitutional and federal statutory issues." *LaShawn A. ex rel. Moore v. Kelly*, 990 F.2d 1319, 1324 (D.C.Cir.1993) ("*LaShawn I*"), *cert. denied,* —— U.S. ——, 114 S.Ct. 691, 126 L.Ed.2d 659 (1994). Under District law, children reported to have been abused or neglected had a private right of action to enforce the District's Prevention of Child Abuse and Neglect Act. *Turner v. District of Columbia*, 532 A.2d 662 (D.C. 1987). Because a government owes greater duties toward those in its custody, the panel concluded that the children in the District's foster care system also had a private right of action under the Act. *LaShawn I*, 990 F.2d at 1325. In addition, the panel noted that the other District statute relied on by the children, the Youth Residential Facilities Li-

censure Act, explicitly provides these children with a private cause of action to sue under the Prevention of Child Abuse and Neglect Act. *Id.* at 1325–26. These statutes, the panel held, "provide[d] an independent basis for supporting the district court's judgment." *Id.* at 1326.

Accordingly, rather than reach the difficult constitutional and federal statutory questions, the *LaShawn I* panel remanded the case to the district court "with instructions to fashion an equally comprehensive order based entirely on District of Columbia law, if possible." *Id.* The panel explained that the District's statutory and regulatory scheme was "appropriately before us under our pendent jurisdiction," *id.* at 1324, and that federal judicial authority to decide the case on pendent grounds was "incontrovertible," *id.* at 1326.

The District sought rehearing from that decision. The panel denied the petition. *LaShawn A. v. Dixon*, No.91–7159 (D.C.Cir. Aug. 9, 1993). The District suggested rehearing *in banc*. It did not get the votes. *LaShawn A. v. Dixon*, No. 91–7159 (D.C.Cir. Aug. 9, 1993). The District asked the Supreme Court to review the decision. Its petition for writ of certiorari was denied. *Kelly v. LaShawn A. ex rel. Moore*, —— U.S. ——, 114 S.Ct. 691, 126 L.Ed.2d 659 (1994).

On remand, the district court sought to comply with the direction of *LaShawn I* by entering a modified remedial order based on local law. *LaShawn A. v. Kelly*, Civ. No. 89–1754 (D.D.C. Jan. 27, 1994). The District of Columbia appealed again, this time arguing that (1) under both the terms of the parties' agreement and general principles of contract law, the original remedial order should have been vacated because *LaShawn I* had "not affirmed" the district court's finding of liability under federal law, and (2) the modified remedial order was not "based on" local law as required by *LaShawn I*.

Rather than confront those issues, a divided panel of this court remanded the case to the district court to "re-examine" its exercise of pendent jurisdiction over the claims arising under local law. *LaShawn A. v. Barry*, 69 F.3d 556, 570 (D.C.Cir.1995) ("*LaShawn II*"), *vacated and reh'g in banc granted,* 74

F.3d 303 (D.C.Cir.1996). The *LaShawn II* majority acknowledged that *LaShawn I* explicitly decided that the district court had the "power" to exercise pendent jurisdiction under the first step of *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). 69 F.3d at 560. The *LaShawn II* majority also acknowledged that the *LaShawn I* panel had decided—by necessary implication—that an exercise of pendent jurisdiction was appropriate under *Gibbs* step two. *Id.* Nonetheless, the *LaShawn II* majority concluded that it was free to revisit *LaShawn I*'s *Gibbs* step two decision because, it said, the law-of-the-case doctrine does not preclude reconsideration of "jurisdictional" questions decided but "not explicitly addressed" in a prior appeal. *Id.* at 562.

Upon the plaintiffs' suggestion, we granted rehearing *in banc* and vacated the judgment of the *LaShawn II* majority. *LaShawn A. v. Barry,* 74 F.3d 303 (D.C.Cir.1996). We then directed the parties to brief the following question:

> Under either the law-of-the-case doctrine or law-of-the-circuit doctrine, did the decision in *LaShawn I,* 990 F.2d 1319 (D.C.Cir.1993), preclude the panel in *LaShawn II,* 69 F.3d 556 (D.C.Cir.1995), from considering whether the district court could properly exercise its jurisdiction under *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)?

*LaShawn A. v. Barry,* No. 94–7044 (D.C.Cir. Feb. 9, 1996). We now answer that question in the affirmative.

## II

■ Inconsistency is the antithesis of the rule of law. For judges, the most basic principle of jurisprudence is that " 'we must act alike in all cases of like nature.' "[2] Two

time-honored doctrines help put that principle into practice. The first is the law-of-the-case doctrine: the *same* issue presented a second time in the *same case* in the *same court* should lead to the *same result.*[3] The second is the law-of-the-circuit doctrine: the *same issue* presented in a *later case* in the *same court* should lead to the *same result.* Both doctrines play a role in this case.

■ "When there are multiple appeals taken in the course of a single piece of litigation, law-of-the-case doctrine holds that decisions rendered on the first appeal should not be revisited on later trips to the appellate court." *Crocker v. Piedmont Aviation, Inc.,* 49 F.3d 735, 739 (D.C.Cir.), *cert. denied,* — U.S. —, 116 S.Ct. 180, 133 L.Ed.2d 118 (1995); *see also Northwestern Ind. Tel. Co. v. FCC,* 872 F.2d 465, 471 (D.C.Cir.1989), *cert. denied,* 493 U.S. 1035, 110 S.Ct. 757, 107 L.Ed.2d 773 (1990). The Supreme Court has instructed the lower courts to be "loathe" to reconsider issues already decided "in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.' " *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 817, 108 S.Ct. 2166, 2178, 100 L.Ed.2d 811 (1988) (quoting *Arizona v. California,* 460 U.S. 605, 618 n. 8, 103 S.Ct. 1382, 1391 n. 8, 75 L.Ed.2d 318 (1983)).

The *LaShawn II* majority identified no such "extraordinary circumstance" to justify reconsideration of *LaShawn I*'s pendent jurisdiction decision, and we are aware of none. There had been no intervening change in controlling legal authority, *see McKesson Corp. v. Islamic Republic of Iran,* 52 F.3d 346, 350 (D.C.Cir.1995), *cert. denied,* — U.S. —, 116 S.Ct. 704, 133 L.Ed.2d 660 (1996), and the *LaShawn I* decision was not "clearly erroneous." *See Christianson,* 486 U.S. at 817, 108 S.Ct. at 2178.[4] Nonetheless, the

---

**2.** *Ward v. James,* [1966] 1 Q.B. 273, 294 (C.A.) (quoting Lord Mansfield in John Wilkes' case, *Rex v. Wilkes,* 98 Eng. Rep. 327, 335 (1770)). *See* Henry J. Friendly, *Indiscretion About Discretion,* 31 Emory L. J. 747, 758 (1982).

**3.** Of course, the law-of-the-case doctrine reaches beyond the court that made the first decision. It applies just as strongly to coordinate courts, *see Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 816, 108 S.Ct. 2166, 2177–78, 100

L.Ed.2d 811 (1988), and an even more powerful version of the doctrine—sometimes called the "mandate rule"—requires a lower court to honor the decisions of a superior court in the same judicial system. *See Sibbald v. United States,* 37 U.S. (12 Pet.) 488, 492, 9 L.Ed. 1167 (1838).

**4.** The District now argues that the *LaShawn I* decision was fundamentally flawed because it analyzed pendent jurisdiction under *Gibbs* rather than *Pennhurst State School & Hospital v. Hald-*

*LaShawn II* majority thought itself free to revisit *LaShawn I*'s *Gibbs* step two decision on the ground that the law-of-the-case doctrine contains an exception allowing a panel to reexamine any "jurisdictional" question decided, but not extensively discussed, by an earlier panel in an earlier appeal of the same case.

No such exception exists. In *Christianson v. Colt Industries Operating Corp.*—a case involving one circuit's attempt to revisit the transfer decision of another circuit—the Supreme Court specifically rejected any "jurisdictional question" exception to the law-of-the-case doctrine. The Court said:

> There is no reason to apply law-of-the-case principles less rigorously to transfer decisions that implicate the transferee's jurisdiction. Perpetual litigation of any issue—jurisdictional or nonjurisdictional—delays, and therefore threatens to deny, justice.

*Id.* at 816–17 n. 5, 108 S.Ct. at 2178 n. 5. In reaching that conclusion, the Court rejected *Potomac Passengers Ass'n v. Chesapeake & Ohio Railway,* 520 F.2d 91, 95 n. 22 (D.C.Cir.1975), in which this court first suggested that the law-of-the-case doctrine might not preclude reconsideration of jurisdictional questions. *Id.* Before the Supreme Court decided *Christianson,* the lower federal courts frequently cited *Potomac Passengers* for the notion that jurisdictional questions are relatively unrestrained by law-of-the-case considerations. In the eight years since *Christianson,* however, references to *Potomac Passengers* have been few and far between. Only two federal courts have relied on *Potomac Passengers,* and then only

to bolster the unremarkable conclusion that a district court is free to reconsider its own non-final jurisdictional decisions. *Matek v. Murat,* 862 F.2d 720, 724 n. 1 (9th Cir.1988); *Travelers Indem. Co. v. Household Int'l, Inc.,* 775 F.Supp. 518, 530 (D.Conn.1991).[5]

That the jurisdictional question exception of *Potomac Passengers* is no longer good law should come as no particular surprise. Today, this court and other courts of appeals routinely apply law-of-the-case preclusion to questions of jurisdiction, *see, e.g., McKesson Corp.,* 52 F.3d at 350; *Oneida Indian Nation v. New York,* 860 F.2d 1145, 1151 (2d Cir. 1988), *cert. denied,* 493 U.S. 871, 110 S.Ct. 200, 107 L.Ed.2d 154 (1989), and do so even when the first decision regarding jurisdiction is less than explicit. *See, e.g., In re Memorial Estates, Inc.,* 950 F.2d 1364, 1367 (7th Cir.1991), *cert. denied,* 504 U.S. 986, 112 S.Ct. 2969, 119 L.Ed.2d 589 (1992). The dissent complains that the *LaShawn I* panel did not explicitly discuss the *Gibbs* step two question, except to say that pendent jurisdiction was "incontrovertible." 990 F.2d at 1326. But the Supreme Court's holding in *Christianson* renders the dissent's complaint irrelevant. The law-of-the-case doctrine, the Supreme Court said, turns "on whether a court previously decide[d] upon a rule of law ... not whether, or how well, it explained the decision." 486 U.S. at 817, 108 S.Ct. at 2178 (internal quotation marks omitted). We said the same in *Crocker,* 49 F.3d at 739: the law-of-the-case doctrine applies to questions decided "explicitly or by necessary implication." As the dissent acknowledges, the *LaShawn I* panel decided the *Gibbs* step two question

---

*erman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) ("*Pennhurst II*"). But *Pennhurst II* dealt with the Eleventh Amendment to the Constitution, which prohibits federal courts from entertaining "suit[s] in law or equity, commenced or prosecuted against *one of the United States.*" U.S. CONST. amend. XI (emphasis added). The District of Columbia is not a state. It is the seat of our national government, subject—as has become increasingly clear of late—to the plenary authority of Congress under Article I, Section 8, Clause 17 of the Constitution. Thus, *Pennhurst II* has no application here. Perhaps that is why the District failed even to mention *Pennhurst II* in its petition for rehearing, suggestion for rehearing *in banc,* and petition for certiorari from *LaShawn I.*

5. The Tenth Circuit recently cited *Potomac Passengers* as support for the argument that the "always-open character of jurisdictional questions" should be "a consideration weighing against" the application of the law-of-the-case doctrine to such questions. *Wilmer v. Board of County Comm'rs,* 69 F.3d 406, 410 n. 3 (10th Cir.1995). The *Wilmer* court did not adopt that view, however; it held only that the law-of-the-case doctrine does not preclude consideration of questions—jurisdictional or otherwise—that were *not* decided in a prior appeal. *Id.* at 409–10. Because the *LaShawn I* panel in fact necessarily decided the *Gibbs* step two question (dissent at 1399), the *Wilmer* holding has no application here.

"by necessary implication." Dissent at 1399. Under *Christianson*, nothing more is required.[6]

■ The procedural setting of this case calls for an even stronger than usual version of the law-of-the-case doctrine. While law-of-the-case doctrine is a prudential creation of the courts, the law-of-the-circuit doctrine is derived from legislation and from the structure of the federal courts of appeals. Courts of appeals sit in panels, or divisions, of "not more than three judges" pursuant to the authority granted in 28 U.S.C. § 46(c). The "decision of a division" is "the decision of the court." Revision Notes to 28 U.S.C. § 46 (citing *Textile Mills Sec. Corp. v. Commissioner*, 314 U.S. 326, 62 S.Ct. 272, 86 L.Ed. 249 (1941)); *see Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 876 (D.C.Cir.1992) (in banc), *cert. denied*, 507 U.S. 984, 113 S.Ct. 1579, 123 L.Ed.2d 147 (1993). Were matters otherwise, the finality of our appellate decisions would yield to constant conflicts within the circuit. *Textile Mills Sec. Corp.*, 314 U.S. at 335, 62 S.Ct. at 278. One three-judge panel, therefore, does not have the authority to overrule another three-judge panel of the court. *E.g., United States v. Caldwell*, 543 F.2d 1333, 1370 n. 19 (D.C.Cir.1974), *cert. denied*, 423 U.S. 1087, 96 S.Ct. 877, 47 L.Ed.2d 97 (1976). That power may be exercised only by the full court, either through an *in banc* decision, *id.*, or pursuant to the more informal practice adopted in *Irons v. Diamond*, 670 F.2d 265, 268 n. 11 (D.C.Cir.1981).

■ Because the law-of-the-case doctrine alone precluded the *LaShawn II* panel from revisiting the *Gibbs* decision of *LaShawn I*,

we need not delve deeply into the interplay between the law-of-the-case and the law-of-the-circuit doctrines.[7] Suffice it to say that, when both doctrines are at work, the law-of-the-circuit doctrine should increase a panel's reluctance to reconsider a decision made in an earlier appeal in the same case. *See, e.g., United States v. 162.20 Acres of Land*, 733 F.2d 377, 379 (5th Cir.1984) (explaining that when a prior panel in the same circuit has decided an issue, law-of-the-circuit doctrine supplants law-of-the-case doctrine and precludes reconsideration of that decision in a subsequent appeal, even if the second panel believes the first was wrong), *cert. denied*, 469 U.S. 1158, 105 S.Ct. 906, 83 L.Ed.2d 920 (1985); *cf. Laffey v. Northwest Airlines, Inc.*, 740 F.2d 1071, 1077 (D.C.Cir.1984) (holding that both the law of the case and the law of the circuit precluded a panel from reconsidering issues resolved in a prior appeal in the same case), *cert. denied*, 469 U.S. 1181, 105 S.Ct. 939, 83 L.Ed.2d 951 (1985). While the law-of-the-case doctrine offers several exceptions—although not, as we have explained, a "jurisdictional question" one—the law-of-the-circuit doctrine is much more exacting. Whether the law-of-the-circuit doctrine allows reconsideration of a prior decision that was " 'clearly erroneous and would work a manifest injustice,' " *see Christianson*, 486 U.S. at 817, 108 S.Ct. at 2178 (quoting *Arizona v. California*, 460 U.S. at 618 n. 8, 103 S.Ct. at 1391 n. 8), is a question we can leave for another day: in revisiting *LaShawn I*, the *LaShawn II* majority did not identify any "clear error," and, as we said in discussing the law-of-the-case doctrine, *see supra* p.

6. As the dissent notes (dissent at 1399), the Supreme Court said in *Pennhurst II* that it does not consider itself bound by decisions on questions of jurisdiction made *sub silentio* in previous cases "when a subsequent case finally brings the jurisdictional issue" to the Court. 465 U.S. at 119, 104 S.Ct. at 918 (internal quotation marks and citation omitted). But that plainly has nothing to do with this appeal. The quoted portion of *Pennhurst II* dealt with the *stare decisis* effect of decisions in *other* cases, not the effect of earlier decisions by the same appellate court in the *same* case.

7. There are situations in which the law-of-the-case doctrine but not the law-of-the-circuit doc-

trine applies. If a party fails to raise a point he could have raised in the first appeal, the "waiver variant" of the law-of-the-case doctrine generally precludes the court from considering the point in the next appeal of the same case. *See Crocker*, 49 F.3d at 739–40. The law-of-the-circuit doctrine would not, however, bind another panel. Without a holding on the point, the first panel's decision would have no precedential effect. "Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Webster v. Fall*, 266 U.S. 507, 511, 45 S.Ct. 148, 149, 69 L.Ed. 411 (1925).

1393, we do not believe that the *LaShawn I* panel committed one.

Instead, the *LaShawn II* majority claimed that it was free to revisit *LaShawn I* under a "jurisdictional question" exception to the law-of-the-case doctrine. To repeat, no such exception exists. But even if it did, *LaShawn I*'s decision on *Gibbs* step two would not fall within it. As the Supreme Court explained in *Mayor of Philadelphia v. Educational Equality League*, 415 U.S. 605, 627, 94 S.Ct. 1323, 1336, 39 L.Ed.2d 630 (1974), the view of "pendent jurisdiction as something akin to subject matter jurisdiction that may be raised *sua sponte* at any stage and that is capable of aborting prior federal court proceedings is a misreading of the law."

The concept of pendent jurisdiction entails a jurisdictional element, but that is comprised in the first step of the *Gibbs* analysis. *See Wal–Juice Bar, Inc. v. Elliott*, 899 F.2d 1502, 1503 (6th Cir.1990); *District of Columbia Common Cause v. District of Columbia*, 858 F.2d 1, 10 (D.C.Cir.1988); *Dimond v. District of Columbia*, 792 F.2d 179, 188 (D.C.Cir.1986); *Financial Gen. Bankshares, Inc. v. Metzger*, 680 F.2d 768, 772 (D.C.Cir. 1982). Step one of *Gibbs* deals with the court's "power" to hear pendent local law claims—its jurisdiction—when the case raises a "substantial" federal issue and the federal and local law claims "derive from a common nucleus of operative fact" and "are such that [the plaintiff] would ordinarily be expected to try them all in one proceeding." *Gibbs*, 383 U.S. at 725, 86 S.Ct. at 1138. The federal courts' subject matter jurisdiction, to the extent Congress authorizes it, is derived directly from Article III, Section 2, extending the judicial "Power" to "all Cases in Law and Equity arising under this Constitution, the Laws of the United States...." U.S. CONST. art. III, § 2; *see also Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 807, 106 S.Ct. 3229, 3231–32, 92 L.Ed.2d 650 (1986); *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 395–96, 100 S.Ct. 1202, 1208–09, 63 L.Ed.2d 479 (1980). The doctrine of pendent jurisdiction rests on the idea

that the court's jurisdiction over the underlying federal claim brings the related pendent claims under the scope of Article III because they are part of the same "case" or "controversy." *See Gibbs*, 383 U.S. at 725, 86 S.Ct. at 1138; *Osborn v. Bank of the United States*, 22 U.S. (9 Wheat.) 738, 821–23, 6 L.Ed. 204 (1824). *Gibbs*'s requirements of a substantial federal claim, a common nucleus of operative fact, and the expectation of one trial, 383 U.S. at 725, 86 S.Ct. at 1138, "serve[ ] as an operational definition of the 'one constitutional "case"' language." Richard A. Matasar, *Rediscovering "One Constitutional Case": Procedural Rules and the Rejection of the* Gibbs *Test for Supplemental Jurisdiction*, 71 CAL. L.REV. 1399, 1416 (1983).

There can be not the slightest doubt here that the children's claims under federal statutory law, the Constitution, and District of Columbia law all arise from a common set of facts. The district court's jurisdiction—its power—to decide the local law claims thus turned on the substantiality of the underlying federal claims. Whether a court may decide pendent claims is determined on the face of the pleadings. The ultimate disposition of the federal claim is "immaterial on the question of power." 13B CHARLES A. WRIGHT, ARTHUR R. MILLER, EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3567.1, at 114–15 (1995).

Once a district court finds a substantial federal claim, it has jurisdiction over the entire case. The court then must engage in the second step of the *Gibbs* analysis and decide whether to exercise that jurisdiction over the local or state law claims. This aspect of *Gibbs* is not a jurisdictional determination, which is why *Gibbs* held that "pendent jurisdiction is a doctrine of discretion...." 383 U.S. at 726, 86 S.Ct. at 1139.[8] There is no other way to explain *Schmidt v. Oakland Unified School District*, 457 U.S. 594, 595, 102 S.Ct. 2612, 2612, 73 L.Ed.2d 245 (1982), in which the Supreme Court held that a federal court's decision whether to resolve

---

**8.** While it is true that the Supreme Court in *Gibbs* explained that the step two question remains open through "the litigation," *see* dissent at 1403, the Court meant only that the question

need not be decided forever on the pleadings, but could be reconsidered during pretrial proceedings or even the trial itself. *See Gibbs*, 383 U.S. at 727, 86 S.Ct. at 1139–40.

pendent local law claims was to be reviewed for abuse of discretion.[9] Clearly, a question cannot be both discretionary and jurisdictional: the federal courts have no "discretion" to hear cases outside their jurisdiction. The *Gibbs* step two question is thus not "jurisdictional" and would not come under a "jurisdictional" question exception to the law-of-the-case doctrine if such an exception existed.[10]

\* \* \*

Our analysis resolves the question we posed: the law-of-the-case and law-of-the-circuit doctrines precluded the panel in *La-Shawn II* from revisiting the *Gibbs* step two decision reached in *LaShawn I*. It does not, however, resolve the issues the District raised in its appeal. *See supra* p. 1392. Because the *LaShawn II* panel remanded the case to the district court to reexamine the pendent jurisdiction question, it did not address those arguments when the appeal was before it. We remit the appeal to the panel so it may do so now.

*So ordered.*

**SILBERMAN, Circuit Judge, concurring:**

I join the majority opinion; I do not think it was clear error for the original panel to have pretermitted the federal statutory and constitutional questions and directed the district judge "to fashion an equally comprehensive order based entirely on District of Columbia law, if possible." The law of the case exception for clear error is only awkwardly applied to a decision of a roughly contemporaneous panel of the same appellate court, which is why the majority is quite right that in this sort of situation we have law of the case plus elements of law of the circuit. Whatever the boundary between clear error and error, however, it surely cannot be clear error for the panel to have not accepted an argument—based on an analogy to *Pennhurst II*—which the District did not make.

Still, I do believe the original panel's disposition was dubious. I think that the implication of *Gibbs'* observation that a federal court should not exercise pendent jurisdiction if the federal claims are dismissed, *see* 383 U.S. at 726, 86 S.Ct. at 1139, is that the federal claims should be considered first. Ordinarily, of course, federal courts seek to avoid deciding federal constitutional questions, *see Ashwander v. TVA*, 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (Brandeis, J., concurring), but when the alternative is the unseemly prospect of taking over a *state* institution to force compliance with state law, the *Ashwander* doctrine should yield. By deciding *Pennhurst II* on Eleventh Amendment sovereign immunity grounds, the Supreme Court put paid to the prospect of federal courts being used in that fashion against a state. But there still remains the District of Columbia, which, of course, is not a state and therefore not enti-

---

9. Congress has also explicitly recognized the discretionary nature of the second step of the *Gibbs* inquiry. The Judicial Improvements Act, enacted in 1990 and codified in part at 28 U.S.C. § 1367, states:

... in any civil action of which the district courts have original jurisdiction, the district courts *shall* have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a) (italics added). When the federal claim drops out, the district court has discretion to retain or dismiss the pendent local law claims: "The district courts *may* decline to exercise supplemental jurisdiction over a claim in subsection (a)" for any of the reasons listed in § 1367(c)(1)-(4). 28 U.S.C. § 1367(c) (italics added).

Section 1367 does not apply in this particular case because the children's complaint was filed before the statute's effective date. Still, § 1367's language is instructive in that the provision, *inter alia*, "codified the doctrine of pendent jurisdiction developed by the Supreme Court in the case of *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), and its progeny." *Shanaghan v. Cahill*, 58 F.3d 106, 109 (4th Cir.1995); *see also Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1266 (D.C.Cir.1995).

10. The dissent suggests that *Minker v. Baltimore Annual Conference of United Methodist Church*, 894 F.2d 1354 (D.C.Cir.1990), and *Maguire v. Marquette University*, 814 F.2d 1213 (7th Cir.1987), imply that the *Gibbs* step two is jurisdictional. Dissent at 1403–1404. They do not. Those cases treated as "jurisdictional" only the *Gibbs* "rule" that "if the federal claims are dismissed before trial ... the state claims should be dismissed as well." *See Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139; *Minker*, 894 F.2d at 1361; *Maguire*, 814 F.2d at 1218 n. 4.

tled to Eleventh Amendment protection. The District is correct, however, in arguing that whether the panel erred or not depends on whether one is to regard the District as akin to a state under the *Gibbs–Pennhurst II* line. We have traditionally so treated the District, and I think the panel should have done so—at least by deciding the federal questions first so that if they were decided against the plaintiffs, the case could be dismissed.

To be sure, our tradition of treating the District jurisprudentially like a state may be outmoded: the District's "home rule" itself might well be thought a sad failure. Surely those organizations who, as plaintiffs, seek federal judicial control of more and more of the District's governmental functions feed that perception. If home rule is to be abolished, however, it should be done by Congress, not incrementally by federal judges.

WILLIAMS, Circuit Judge, with whom HENDERSON, Circuit Judge, joins, dissenting:

A federal district judge—an exceptionally fine one, it so happens—has taken full command of a major chunk of District of Columbia government, the Child and Family Services Division of the Department of Human Services. Although the law in whose name he runs the department is local, not federal, no opinion of the district court or this court has ever performed the balancing required by *United Mine Workers v. Gibbs,* 383 U.S. 715, 726–27, 86 S.Ct. 1130, 1139–40, 16 L.Ed.2d 218 (1966), for the exercise of pendent jurisdiction. The majority tells us that because of "law of the case," this substitution of judges for elected government must continue into the indefinite future, without any court ever engaging in the balancing required by *Gibbs.* I think not. To me it appears that (1) law of the case does not bar one panel of the court from addressing a jurisdictional issue that a prior panel resolved only implicitly—*without one word* of discussion; and (2) the balancing required for pendent jurisdiction under *Gibbs*'s "second step" is in fact jurisdictional.

\*       \*       \*

The majority's statement of the history of the litigation prior to the now-vacated panel opinion, Maj. Op. at 1391–1393, is not inaccurate. But neither is it complete. First, the consent decree negotiated between the parties consists of a 90–page single-spaced code of operations. Thus the degree of federal judicial control is remarkable in its sweep and detail. The District negotiated the decree after and under the pressure of a district court decision on the merits, *LaShawn A. v. Dixon,* 762 F.Supp. 959 (D.D.C.1991), but before the Supreme Court's decision in *Suter v. Artist M.,* 503 U.S. 347, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992). As *Suter* rejected two of the holdings of the district court— that §§ 671(a)(9) & (a)(15) of the Adoption Assistance Act created rights enforceable under 42 U.S.C. § 1983—with implications for the rest of the court's statutory analysis, the judicial reasoning that compelled the District to embrace the consent decree was obviously vulnerable. Indeed, on the two specific provisions addressed in *Suter,* it was plainly unsustainable. Thus the District had, under pressure that was at least in part ill-founded, agreed to the most detailed imaginable federal judicial supervision of a major portion of its governance.

Second, the majority does not convey— indeed, it is hard to convey—how absent from the first panel opinion, *LaShawn A. ex rel. Moore v. Kelly,* 990 F.2d 1319 (D.C.Cir. 1993) ("*LaShawn I*"), is any reference to or hint of the balancing required for pendent jurisdiction under the second step of *Gibbs.* The following is its *entire* discussion of pendent jurisdiction:

> Our authority to decide the case entirely on pendent state grounds is incontrovertible. The Supreme Court has held that "where two distinct grounds in support of a single cause of action are alleged, one only of which presents a federal question ... the federal court, even though the federal ground be not established, may nevertheless retain and dispose of the case upon the nonfederal ground." *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 722, 86 S.Ct. 1130, 1137, 16 L.Ed.2d 218 (1966) (quoting *Hurn v. Oursler,* 289 U.S. 238, 246, 53 S.Ct. 586, 589, 77 L.Ed. 1148 (1933)).

990 F.2d at 1326. The only language quoted from *Gibbs* relates exclusively to the first step required by that case; that quotation frames the panel's own language (i.e., the non-quoted part), referring to the court's "authority" to decide the case, which echoes *Gibbs*'s observation that there is "power" in the court to hear the case if the first test is met—the common nucleus of operative facts. See *Gibbs,* 383 U.S. at 725, 86 S.Ct. at 1138. Accordingly, we are not in any way here dealing with a question "not extensively discussed," see Maj. Op. at 1394, but, so far as the balancing required by *Gibbs*'s second step is concerned, a question not discussed at all.

* * *

*The status of jurisdictional issues under law of the case.* There is, of course, no dispute that law of the case traditionally bars reconsideration even of an issue merely decided "by necessary implication," subject to equally traditional exceptions for decisions found clearly erroneous or working manifest injustice, or, at least in some cases, undermined by an intervening change in controlling authority. Nor can it be doubted that *LaShawn I*'s instruction to the district court to go full speed ahead on the basis of District law resolved the *Gibbs* second step "by necessary implication." After all, as jurisdiction is a necessary predicate to judicial action, regardless of whether any party has attacked jurisdiction, see, e.g., *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 230–31, 110 S.Ct. 596, 607–08, 107 L.Ed.2d 603 (1990) ("federal courts are under an independent obligation to examine their own jurisdiction," regardless of whether any party has raised the issue), any decision to reach the merits implicitly rejects any attacks on the court's jurisdiction. Thus, despite the complete omission of any reference in the briefs in *LaShawn I* to *Gibbs* (or, so far as appears, to pendent jurisdiction at all), and the court's complete non-discussion of *Gibbs*'s second step, by standard reasoning *LaShawn I* is properly said to have found, by necessary implication, that *Gibbs*'s second step was satisfied.

Jurisdictional issues are, of course, special in a number of regards. First, as already noted, a court is not only free but affirmatively obliged to raise the issue of its jurisdiction where it might be in question, even though the parties never dreamed of the issue. Second, judicial decisions *implicitly* rejecting attacks on a court's jurisdiction (or that of a lower court), i.e., ones that proceed to the merits without discussion of jurisdiction, have no precedential force on the jurisdictional point. "When questions of jurisdiction have been passed on in prior decisions *sub silentio,* this Court has never considered itself bound when a subsequent case finally brings the jurisdictional issue before us." *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 119, 104 S.Ct. 900, 918, 79 L.Ed.2d 67 (1984) ("*Pennhurst II*").

The first question before the court, then, is whether the special characteristics of jurisdictional issues require any special treatment for purposes of law of the case. This court once took a firm position that they did so—to the point of removing such questions from law-of-the-case analysis, *Potomac Passengers Ass'n v. Chesapeake & Ohio R. Co.,* 520 F.2d 91, 95 n. 22 (D.C.Cir.1975), and the case was widely cited for that proposition.[1] As the majority rightly observes, however, the Supreme Court expressed at least a degree of disapproval in a dictum:

> There is no reason to apply law-of-the-case principles less rigorously to transfer decisions that implicate the transferee's jurisdiction. Perpetual litigation of any issue—jurisdictional or nonjurisdictional—delays, and therefore threatens to deny, justice. But cf. *Potomac Passengers Assn. v. Chesapeake & Ohio R. Co.,* ... 520 F.2d 91, 95 n. 22 [ (D.C.Cir.1975) ].

*Christianson v. Colt Industries Operating Corp.,* 486 U.S. 800, 816 n. 5, 108 S.Ct. 2166, 2178 n. 5, 100 L.Ed.2d 811 (1988).

1. See, e.g., *Green v. Dept. of Commerce,* 618 F.2d 836, 839 & n. 9 (D.C.Cir.1980); *Amusement & Music Operators Ass'n v. Copyright Royalty Tribunal,* 636 F.2d 531, 532–33 & nn.2–4 (D.C.Cir. 1980); *Acton Corp. v. Borden,* 670 F.2d 377, 379 n. 2 (1st Cir.1982); *Crane Co. v. American Standard,* 603 F.2d 244, 247 (2d Cir.1979); *EEOC v. Neches Butane Products Co.,* 704 F.2d 144, 147 n. 2 (5th Cir.1983); *Amen v. City of Dearborn,* 718 F.2d 789, 794 (6th Cir.1983); *Christianson v. Colt Industries Operating Corp.,* 798 F.2d 1051, 1056 (7th Cir.1986).

Since *Christianson,* the cases have been more mixed,[2] and are certainly consistent with the view, which I share, that *Potomac Passengers* overdid it. *Christianson*'s direct impact appears to have been slight, with courts applying its discussion of law-of-the-case doctrine relating to jurisdictional questions only in the precise context at issue there—application of a transferring court's jurisdictional analysis in a coordinate court to which the case has been transferred.[3] See, e.g., *Ukiah Adventist Hospital v. FTC,* 981 F.2d 543, 546 n. 4 (D.C.Cir.1992) ("Review of a transfer order [including jurisdictional grounds] in a transferee court is exceedingly limited.") (dictum citing *Christianson*); *Wang Laboratories v. Applied Computer Sciences,* 958 F.2d 355, 358 (Fed.Cir.1992) (accepting case transferred by First Circuit, the court reasoned that "if the transferee court can find the transfer decision plausible, its jurisdictional inquiry is at an end"); *Moses v. Business Card Express,* 929 F.2d 1131, 1137 (6th Cir.1991) (upholding, under *Christianson,* district court's decision to apply law-of-the-case principles to transfer decision made pursuant to forum selection clause; technically venue rather than jurisdictional issue). While post-*Christianson* decisions have sometimes applied law of the case to jurisdictional questions outside the transfer context, in doing so they have neither relied on the *Christianson* dictum nor even expressly considered whether jurisdictional issues called for special treatment. See *McKesson Corp. v. Islamic Republic of Iran,* 52 F.3d 346, 351 (D.C.Cir.1995); *In the Matter of Memorial Estates,* 950 F.2d 1364, 1367 (7th Cir.1991); *Oneida Indian Nation of New York v. State of New York,* 860 F.2d 1145, 1151 (2d Cir. 1988).

Moreover, at least one circuit that once applied law of the case to a jurisdictional issue without discussion later acknowledged the special character of such issues. In *Di-Laura v. Power Authority,* 982 F.2d 73, 77 (2d Cir.1992), the court held that a district court was not barred by law of the case from reconsidering its own non-final orders, noting that "subject matter jurisdiction is particularly suited for reconsideration." (As Judge Winter noted in a separate opinion, however, the issue was in fact moot because what might have been law of the case for the district court could not have prevented review by the court of appeals, see *id.* at 81.) See also *Matek v. Murat,* 862 F.2d 720, 724 n. 1 (9th Cir.1988) (apparent dictum citing *Potomac Passengers* for the proposition that "[s]ubject matter jurisdiction, because of its intrinsic importance to the judicial power of the federal courts, is particularly suitable for reconsideration").

One post-*Christianson* case, *Wilmer v. Board of County Comm'rs of Leavenworth County,* 69 F.3d 406 (10th Cir.1995), confronted a problem closely akin to ours. In a prior pass at the case, the majority had disregarded a jurisdictional issue that the dissent had "tentatively" raised. *Id.* at 410. Did this bar the panel from considering it? The court noted that since any merits decision implicitly rejects all jurisdictional attacks, application of law of the case as conventionally articulated would bar all consideration of such issues at any time after an initial final judgment, thereby conflicting with the directive of Rule 60(b)(4) of the Federal Rules of Civil Procedure to provide relief where the judgment is void, as well as the decisions that have applied that rule to overturn jurisdictionally defective final judgments. *Id.* at 409–10. *Wil-*

---

**2.** Commentators have apparently not seen *Christianson* as wiping the slate clean. Wright and Miller said in 1981 that "[q]uestions of subject matter jurisdiction are particularly apt to be free of law of the case principles," citing *Potomac Passengers.* Wright & Miller, *Federal Practice and Procedure* § 4478 at 799 n.32 (1981) (under the heading "Suitable to Reconsider"). "In addition to the great importance that is generally attributed to jurisdictional limits, such questions may at times involve *matters of discretion that inherently require reexamination as a case progresses,*" *id.* (emphasis added), the latter phrase

being apparently an allusion to step two of *Gibbs.* The 1996 Supplement to Wright & Miller does not modify that passage, 1996 Supplement at 704 n.32, and cites *Christianson* under the separate category of "Propriety of Transfer: Transferor reconsideration," *id.* at 694–95 n. 26.

**3.** The lone exception seems to be a case involving personal, not subject matter, jurisdiction. *In the Matter of Oil Spill by the Amoco Cadiz Off the Coast of France on March 16, 1978,* 954 F.2d 1279, 1292 (7th Cir.1992).

*mer* concluded, therefore, that a jurisdictional issue could be examined where there had been no *"actual* determination" of the issue, *id.* at 409, and obviously did not regard the dissent's raising the issue as satisfying that test, *id.* at 410, even though, under normal assumptions as to how courts work, that necessarily meant that the majority was fully aware of, and had rejected, the contention.

The line drawn in *Wilmer* seems to me sound. Indeed, I do not understand the majority to say that the "necessary implication" aspect of law of the case means that a court's issuance of a final judgment, logically but not expressly based on a positive jurisdictional finding, precludes any later consideration of the issue. Its ruling, insofar as it proceeds under the assumption that *Gibbs's* second step is jurisdictional (an assumption it ultimately rejects), must rest on the idea that *LaShawn I* "actually" decided that that step was satisfied. But this seems necessarily to rest on a very loose notion of "actual" decision, far looser than that applied by the court in *Wilmer*. The only evidence of actual decision of the issue in *LaShawn I* is what one might infer from its reference to *Gibbs*, coupled with our knowledge that *Gibbs* involves two steps, not one. But that amounts to no more than silent action, in the face of presumptive awareness of an issue, which *Wilmer* clearly regarded as being less than an "actual" determination.

Alternatively, perhaps the majority means that *Gibbs* is a *unitary* proposition. On this view, a citation to the case and a quote from one of the operative passages articulating step one *ipso facto* constitute an "actual" determination of step two. The theory seems to me a bit metaphysical. If *Wilmer* is right, i.e., more is required to trigger law of the case than action on the merits coupled with a sign of judicial *awareness* of the jurisdictional issue, it must be because some more serious evidence of a mental connection with the issues is necessary. If so, then the idea

that the steps of *Gibbs* are unitary seems to be simply a fiction to avoid the requirement that there be evidence of such a mental connection.

The actions of the Supreme Court suggest that mere implicit resolution of a jurisdictional issue should not be binding under law of the case. In *Pennhurst State School & Hospital v. Halderman,* 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981) (*"Pennhurst I"*), the Court had cast doubt on the federal basis for a consent decree enforced against state officials, see *id.* at 18–27, 101 S.Ct. at 1540–45, and remanded the case to the court of appeals to determine the validity of the federal claims. The Court also remanded state law claims to determine "whether state law provides an independent and adequate ground which can support the court's remedial order," without significant discussion of the issue. *Id.* at 31, 101 S.Ct. at 1547.

On remand, the court of appeals recognized that the remand order necessarily implied that it would have jurisdiction to enter the order on state law grounds alone. "Implicit in that direction is a holding that the plaintiffs' federal law claims are of sufficient substance to support the exercise of pendent jurisdiction over that Pennsylvania law claim." *Halderman v. Pennhurst State School & Hospital,* 673 F.2d 647, 650 (3d Cir.1982).[4] The court of appeals then acted on the implied permission *Pennhurst I* had given and found that the Pennsylvania statute provided "adequate support for [the order] independent of federal law." 673 F.2d at 656.

Again the Supreme Court reversed, holding that the Eleventh Amendment denies federal courts jurisdiction to order state officials to conform their conduct to state law. 465 U.S. at 117–21, 104 S.Ct. at 917–19. It brushed aside several earlier implicit rulings to the contrary in other cases, explaining that stare decisis principles did not bar its reconsideration of the jurisdictional issue.

---

4. When the majority in *Pennhurst II* overturned the Third Circuit's adjudication of the state law claims, the dissenters made the same point about *Pennhurst I,* saying that the majority was reversing "the Court of Appeals because it did precisely what this Court ordered it to do"—reinstate its

prior judgment if state law provided an adequate and independent ground to support the remedial order. *Pennhurst II,* 465 U.S. at 126, 104 S.Ct. at 921–22 (Stevens, J., with whom Brennan, Marshall, & Blackmun, JJ., joined, dissenting).

*Id.* at 119, 104 S.Ct. at 918. The decision thus overrode law of the case in the interest of getting the jurisdictional issue right. While the majority did not explicitly address the problem of law of the case, the dissenters did, saying that in reversing the Third Circuit on the second round, "the Court casts aside [the] well-respected doctrine ... of law of the case." 465 U.S. at 165, 104 S.Ct. at 943 (Stevens, J., with whom Brennan, Marshall, & Blackmun, JJ., joined, dissenting).

Despite the obviousness of the law-of-the-case issue and the dissent's explicit discussion, the majority disregarded it. It may thus seem inconsistent for me to attach any importance to the Court's action, in view of what I have said, in agreement with *Wilmer*, on the application of law of the case to undiscussed jurisdictional issues. But law of the case is *not* a jurisdictional issue; it merely "expresses the practice of courts," *Christianson*, 486 U.S. at 817, 108 S.Ct. at 2178 (quotation omitted). Since implicit treatments of non-jurisdictional issues are precedents, see, e.g., *Elcon Enterprises, Inc. v. WMATA*, 977 F.2d 1472, 1484 (D.C.Cir.1992); *King v. U.S. Dep't of Justice*, 830 F.2d 210, 224 (D.C.Cir. 1987), it is appropriate to look to *Pennhurst II* as such. Given the merely "prudential" character of law-of-the-case restrictions, and the doctrine's grounding in concerns of judicial economy, see, e.g., *Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 739–40 (D.C.Cir. 1995), the Court's action strongly suggests that law-of-the-case considerations, like those of stare decisis, give way to jurisdictional concerns where the initial decision has failed to address the issue explicitly.

The majority alludes briefly to law of the circuit, Maj. Op. at 1395–1396, but I think its role here is necessarily marginal. While for non-jurisdictional issues a court's unspoken but necessary premise will often be taken as precedent, see *Elcon Enterprises* and *King*, *supra*, I do not read the majority as saying that should be true for jurisdictional decisions. Such a view would run squarely into *Pennhurst II* and kindred cases. Insofar as the majority is saying that the panel-to-circuit relationship calls for extra caution in re-

examining once-resolved issues, I agree. It is more unseemly for one group of three members of a court to overturn another group of three than for a single judge, or group of judges, to reject his or their former position. The catch is in the phrase "once-resolved." For the reasons already given, I do not believe that *LaShawn I* can be said *ever* to have resolved the issue of how *Gibbs*'s second step should apply to the present litigation.

*Whether* Gibbs's *second step is jurisdictional.* When a federal court is presented with a combination of federal and state claims, it can adjudicate the state law claims only if that is consistent with the two-step analysis outlined in *Gibbs*. 383 U.S. at 725–27, 86 S.Ct. at 1138–40.[5] The first step requires the court to evaluate the substantiality of the federal claim and whether the state and federal claims "derive from a common nucleus of operative fact." *Id.* at 725, 86 S.Ct. at 1138. If these requirements are met, then "there is *power* in the federal courts to hear the whole." *Id.* Then—and the analysis may vary at different stages of the litigation—the court is to balance several variables, such as the desirability of a "surer-footed reading of applicable law," the possible predominance of the state-law issues, the degree to which they are tied to matters of federal policy, possible issues of federal preemption and chances of jury confusion. *Id.* at 726–27, 86 S.Ct. at 1139–40.

The majority concludes that if the first step is taken and there is "power" in the court, no jurisdictional issue remains. See Maj. Op. at 1396–1397. This of course encounters a non-trivial linguistic problem: *Gibbs*'s second step is expressly part of the determination of whether there is "pendent jurisdiction," so one might think it followed, as a matter of ordinary language, that it was jurisdictional. It could, however, be a non-merits, non-jurisdictional inquiry, comparable to abstention and related doctrines. See, e.g., *Burford v. Sun Oil Co.*, 319 U.S. 315, 317–18, 63 S.Ct. 1098, 1098–1100, 87 L.Ed. 1424 (1943); *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800,

---

**5.** Because this litigation was commenced before December 1, 1990, the new supplemental juris-

diction statute, 28 U.S.C. § 1367 (Supp. V 1993), does not apply.

817–19, 96 S.Ct. 1236, 1246–47, 47 L.Ed.2d 483 (1976); *Brillhart v. Excess Ins. Co. of America,* 316 U.S. 491, 494–95, 62 S.Ct. 1173, 1175–76, 86 L.Ed. 1620 (1942).

A natural place to start is with the origin, the way the Court spoke of *Gibbs* step two in *Gibbs* itself:

> That power need not be exercised in every case in which it is found to exist.... Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law....
>
> The question of power will ordinarily be resolved on the pleadings. *But the issue whether pendent jurisdiction has properly been assumed is one which remains open throughout the litigation.* Pretrial procedures or even the trial itself may reveal a substantial hegemony of state law claims, or likelihood of jury confusion, which could not have been anticipated at the pleading stage. Although it will of course be appropriate to take account in this circumstance of the already completed course of the litigation, dismissal of the state claim might even then be merited.

383 U.S. at 726–27, 86 S.Ct. at 1139 (emphasis added). And more recently the Court stated in *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988):

> Under *Gibbs,* a federal court should consider and weigh in each case, and *at every stage of the litigation,* the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims. When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exer-

cise of jurisdiction by dismissing the case without prejudice.

*Id.* at 350, 108 S.Ct. at 619 (emphasis added).[6] Thus the Court has imputed to the *Gibbs* step two inquiry a characteristic normally possessed by jurisdictional issues and rarely if ever by non-jurisdictional ones—the quality of being open to examination throughout the litigation.

Federal courts of appeals, including this circuit, have followed the Supreme Court's lead and imputed to the *Gibbs* step two inquiry another characteristic of jurisdictional issues—that the court is *obliged* to raise it *sua sponte.* In *Maguire v. Marquette University,* 814 F.2d 1213, 1218 & n. 4 (7th Cir.1987), the district court had dismissed plaintiff's federal claim before trial and then proceeded to address a pendent state law claim on the merits. Although defendant did not raise a *Gibbs* step two issue on appeal, the Seventh Circuit declared that "because the rule is *jurisdictional,* we are *obligated* to raise it ourselves." *Id.* at 1218 n. 4 (emphasis added). The court then vacated the district court's dismissal of the pendent claim on the merits. This court has likewise treated *Gibbs* step two analysis as jurisdictional and raised the issue *sua sponte.* In *Minker v. Baltimore Annual Conference of United Methodist Church,* 894 F.2d 1354, 1361 (D.C.Cir.1990), the district court had previously dismissed both federal statutory and state contract claims brought under the Free Exercise Clause of the First Amendment. This court held that the district court had correctly dismissed the federal statutory claims, but had incorrectly dismissed the state contract claims on First Amendment grounds. Without prompting, the court proceeded to hold that because the district court had properly dismissed the federal claim before trial, under *Gibbs*'s second step it should also dismiss the pendent state law claim unless it found diversity of citizenship. *Id.*

The majority dispatches *Maguire* and *Minker* by characterizing them as applica-

---

6. Cf. *Evans v. City of Chicago,* 10 F.3d 474, 479 (7th Cir.1993) (en banc) (holding that mere consent of local officials, without a viable federal claim, could not justify continued enforcement of decree against city) ("[T]he court must ensure that there is a substantial federal claim, *not only* *when the decree is entered but also when it is enforced,* and that the obligations imposed by the decree rest on this rule of federal law rather than the bare consent of the officeholder.") (emphasis added).

tions of a newly coined *Gibbs* step one-and-a-half—cases where the federal claim survives step one but is dismissed before trial. Maj. op. at 1397 n.10. Thus, in its view, the Seventh Circuit's and our treatment of that situation as jurisdictional can't possibly mean that *Gibbs* step two is jurisdictional. But until the majority opinion, no one has perceived this circumstance as involving a special kind of *Gibbs* step; it is simply an instance of *Gibbs* step two so clear that any continued assertion of jurisdiction by the district court would be an abuse of discretion. See *Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139.

The majority, if I read it correctly, says that *Gibbs*'s second step cannot be jurisdictional because it is "discretionary." Maj. Op. at 1396–97. The analysis would be correct if the set of things that are "jurisdictional" could, as a matter of logic, not intersect with the sets of things that are "discretionary." But that's not true. Characterization of a matter as discretionary, at least in the *Gibbs* context, appears to reflect two closely related points. First, the analysis is highly case-specific, turning on a balance of issues that are typically fact-intensive and as to which the answers range along a spectrum rather than taking a simple yes/no form (e.g., the predominance of the state-law questions posed and the likelihood of jury confusion). See *Gibbs,* 383 U.S. at 726–27, 86 S.Ct. at 1139–40. Second, it follows that it will be difficult for appellate courts to articulate specific rules capable of guiding the trial courts, so that a deferential form of appellate review is suitable. See *Mars Steel Corp. v. Continental Bank,* 880 F.2d 928, 932–34 (7th Cir. 1989) (en banc); *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 402, 110 S.Ct. 2447, 2459, 110 L.Ed.2d 359 (1990) (approving reasoning of *Mars Steel Corp.*). An issue with those characteristics can, without logical inconsistency, be jurisdictional as well. When an appellate court finds a district court has abused its discretion on *Gibbs*'s second step analysis, it can still—and I think should still—be understood as having resolved a jurisdictional issue. As I said before, what else could it be resolving?

Professor Shapiro, analyzing a very broad range of jurisdictional issues intertwined with discretionary choice (but not mentioning pendent jurisdiction), notes that in such cases there may be a question "whether the Court was construing the applicable statute as not conferring jurisdiction in the particular case, or was it relying on a discretion not to exercise jurisdiction that admittedly existed?" David Shapiro, *Jurisdiction and Discretion,* 60 N.Y.U. L.Rev. 543, 561 (1985). He thus divides the instances of jurisdiction-cum-discretion into two categories, the first jurisdictional (but with the decision recognized as having discretionary characteristics), the second a purely discretionary overlay on a choice of whether to exercise jurisdiction. He goes on to point out that the distinction may be important for purposes of practical matters such as "the ability of the court to raise a question *sua sponte.*" *Id.* at 562. Indeed. Here, the practical actions of courts—most specifically the Seventh Circuit in *Maguire* and ourselves (less explicitly) in *Minker*—mark *Gibbs*'s second step as jurisdictional.

Finally, the majority relies on language yanked out of context. It quotes *Mayor of Philadelphia v. Educational Equality League,* 415 U.S. 605, 94 S.Ct. 1323, 39 L.Ed.2d 630 (1974), for the proposition that

> the view of "pendent jurisdiction as something akin to subject matter jurisdiction that may be raised *sua sponte* at any stage and that is capable of aborting prior federal court proceedings is a misreading of the law."

*Id.* at 627, 94 S.Ct. at 1336, quoted by Maj. Op. at 1396. But there the majority was objecting to the dissent's coming up with the idea of a remand to the district court for consideration of state law claims that the majority thought "were wholly tangential to the principal theme" of the lawsuit, *id.* at 624, 94 S.Ct. at 1335, and that had been dropped by plaintiffs at both stages of appellate review, *id.* Thus the Court was saying only that unlike issues of subject matter jurisdiction, *state law claims* that are susceptible of pendent jurisdiction are not on that account capable of being resurrected at any time, regardless of abandonment by the claimant.

Accordingly, I believe the *Gibbs* step two balancing is properly regarded as jurisdictional and, for that reason, open to consideration in later phases of a lawsuit where it has not been mentioned before.

\* \* \*

There remains the possibility that, if the above analysis is incorrect, *LaShawn I*'s silent resolution of the *Gibbs* step two issue was subject to the exception in law of the case for "clearly erroneous" prior decisions. As author of the panel opinion, I never suggested that *LaShawn I*'s resolution was clearly erroneous and would be most reluctant to impute any such error to my colleagues. Compare p. 1394 above (noting the unseemly character of overturning the opinion of a prior panel). Indeed, as my opinion for the panel made clear, there are strong values on both sides of the matter—among them two doctrines of judicial self-abnegation in favor of democratic political processes: deferring resolution of constitutional issues where possible, on the one hand, and keeping life-appointed federal judges from taking over the interpretation and application of democratically chosen local law, on the other. In any event, as *LaShawn I* never detectably addressed *Gibbs*'s second step I have no idea what *Gibbs* step two analysis might be at issue, and thus am ill-positioned to find error, much less clear error, in that decision.

\* \* \*

Because I believe that law of the case does not bar later panels of a court from considering jurisdictional issues that a prior panel has resolved implicitly but not expressly, and that the second step required for pendent jurisdiction under *Gibbs* is indeed jurisdictional for purposes of that principle, I dissent.