# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued September 21, 2012        Decided May 24, 2013

No. 11-5276

MUKHTAR YAHIA NAJI AL WARAFI,
APPELLANT

v.

BARACK OBAMA,
APPELLEE

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:09-cv-02368)

---

*S. William Livingston* argued the cause for appellant. With him on the briefs were *Brian E. Foster*, *Jason A. Levine* and *David H. Remes*. *Alan A. Pemberton* entered an appearance.

*Lowell V. Sturgill Jr.*, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the brief were *Tony West*, Assistant Attorney General, and *Douglas N. Letter* and *Robert M. Loeb*, Attorneys.

Before: BROWN and KAVANAUGH, *Circuit Judges*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed by SENTELLE, *Senior Circuit Judge*.

Concurring opinion filed by *Circuit Judge* BROWN.

SENTELLE, *Senior Circuit Judge*: Appellant Mukhtar Al Warafi, a Guantanamo detainee, appeals from a judgment of the district court denying his petition for a writ of habeas corpus. Al Warafi argues that the district court erred in not affording him protection due "medical personnel" under the First Geneva Convention. Because the district court properly held that appellant has not established that he was "medical personnel," it did not err in denying his petition, and we affirm for the reasons set forth more fully below.

**BACKGROUND**

This is our second occasion to consider the habeas petition of Mukhtar Al Warafi. The case began with habeas corpus proceedings in the district court, which concluded with a judgment against Al Warafi reported as *Al Warafi v. Obama*, 704 F. Supp. 2d 32 (D.D.C. 2010). Background facts of Al Warafi's detention and the district court's rejection of his habeas claim are set forth in the district court opinion. The district court concluded that "petitioner was more likely than not part of the Taliban," and "is being lawfully detained." *Id.* at 45.

Upon review, we affirmed the district court's judgment in part, but remanded for further proceedings with respect to a single question. While our prior decision is brief and not officially published, it is available electronically: *Al Warafi v. Obama*, 2011 WL 678437 (D.C. Cir. 2011). We agreed with the district court that "Al Warafi was more likely than not a part of the Taliban." *Id.* However, we directed the district court on remand to develop a further record on Al Warafi's fallback position that "even if he was a part of the Taliban, the district court should have granted his petition because he served

permanently and exclusively as 'medical personnel' within the meaning of Article 24 of the First Geneva Convention and Section 3-15(b)(1)-(2) of Army Regulation 190-8." *Id.*

Article 24 of the Geneva Convention for the Amelioration of the Condition of the Wounded and Sick in Armed Forces in the Field (Aug. 12, 1949), 6 U.S.T. 3114 ("First Geneva Convention" or "Convention"), directs that "staff exclusively engaged in the administration of medical units and establishments . . . shall be respected and protected in all circumstances." Article 28 of the First Geneva Convention declares that "[p]ersonnel designated in Article[ ] 24 . . . who fall into the hands of the adverse Party, shall be retained only insofar as the state of health, the spiritual needs and the number of prisoners of war require." The cited Army Regulation deals with the treatment of "retained personnel," including medical personnel as described in Article 24. Al Warafi has argued throughout this proceeding that he is within the category protected by Article 24. Because the original district court opinion denying his petition for a writ of habeas corpus did not explicitly analyze this claim, we remanded in the unpublished decision cited above.

On remand, the district court reconsidered Al Warafi's petition in light of our remanding order and concluded that the petitioner had not "prove[d] that he qualifies as Article 24 personnel." *Al Warafi v. Obama*, 821 F. Supp. 2d 47, 56 (D.D.C. 2011). Because we conclude that the district court is correct, we affirm the second denial of Al Warafi's petition for habeas corpus.

**ANALYSIS**

Al Warafi has asserted that he qualifies as medical personnel under the Geneva Conventions and Army Regulation

190-8 and that he is therefore entitled to release.  In Section 5 of the Military Commissions Act of 2006, Congress provided, among other things, that a detainee may not invoke the Geneva Conventions in a habeas proceeding.   However, Army Regulation 190-8 expressly incorporates relevant aspects of the Geneva Convention's medical personnel protection.  Army Regulation 190-8 is domestic U.S. law, and in a habeas proceeding such as this, a detainee may invoke Army Regulation 190-8 to the extent that the regulation explicitly establishes a detainee's entitlement to release from custody.  Therefore, for purposes of determining whether Al Warafi is entitled to release as medical personnel under Army Regulation 190-8, we may and must analyze the relevant aspects of the Geneva Conventions that have been expressly incorporated into Army Regulation 190-8.

The commentary to the First Geneva Convention declares that Article 24 personnel "are to be furnished with the means of proving their identity."  GC Commentary 218.  Article 40 of the First Geneva Convention mandates that "[t]he personnel designated in Article 24 . . . shall wear, affixed to the left arm, a water-resistant armlet bearing the distinctive emblem, issued and stamped by the military authority."   In addition to mandating the wearing of the armlet, Article 40 further declares that "[s]uch personnel . . . shall also carry a special identity card bearing the distinctive emblem."  That card "shall be water-resistant and of such size that it can be carried in the pocket."  It further "*shall* be worded in the national language," and include the full name, date of birth, rank and service number of the bearer, and "*shall* state in what capacity he is entitled to the protection of the present Convention."   The Article further requires that "[t]he card *shall* bear the photograph of the owner and also either his signature or his finger-prints or both."  Just as the armlet must bear the stamp of the military authority issuing it, the card "*shall* be embossed with the stamp of the military

authority." (Emphases added.)

It is undisputed that Al Warafi wore no such armlet and carried no such card. For that reason, in our remand order, we stated that "it appears that Al Warafi bears the burden of proving his status as permanent medical personnel." *Al Warafi v. Obama*, 2011 WL 678437.

On remand, the district court reviewed the evidence. The court opined that the Convention created "a straightforward regime in which proper identification is *necessary* to prove one's protected status as permanent medical personnel." 821 F. Supp. 2d at 54 (emphasis in original). In the end, the court concluded that Al Warafi's petition "will be denied."

On appeal, Al Warafi argues, *inter alia*, that "the district court's holding that Article 24 status is conditioned upon detainee having 'official identification' is inconsistent with this Court's remand order . . . ." The argument proceeds that because this court, in our earlier remand decision, stated that we knew that Al Warafi had no identification card or armlet at the time of capture, but nonetheless remanded for further consideration on the question of whether Mukhtar "was permanently and exclusively engaged as a medic," we were, in effect, establishing the law of the case that the lack of such identification did not deprive petitioner of the ability to establish his status by other evidence. We do not accept Al Warafi's argument.

The law of the case doctrine will not bear the weight Al Warafi places upon it. "The law-of-the-case doctrine bars us from considering *only* questions *decided* by this Court in this case." *Coalition for Commonsense in Government Procurement v. United States*, — F.3d —, 2013 WL 45880 (D.C. Cir. 2013) (emphases added) (other emphasis omitted). *See also LaShawn*

*A. v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir. 1996) (en banc) ("The same issue presented a second time in the same case in the same court should lead to the same result." (emphases omitted)). While this is the same question in the same court, we did not decide the question in the unreported order upon which Al Warafi relies. Concededly, the unpublished order is consistent with his interpretation, but it is also consistent with a court which remained agnostic as to the question at issue. Again, we did not decide the question. We left the question open and remanded the case to the district court for further development. On remand, the district court reinstated its prior decision with further discussion of the determinative question, and an apparent firm conviction that other evidence could not substitute for the indicia of medical personnel status recited in the Convention and in the Army Regulation. Upon review, we agree with the district court.

As we noted above, the Convention speaks in mandatory terms. As relevant to this case, and as noted by the district court, the First Geneva Convention protects personnel who are "[m]edical personnel exclusively engaged in the search for, or the collection, transport or treatment of the wounded or sick, or in the prevention of disease, [and] staff *exclusively engaged* in the administration of medical units and establishments." The commentary to the Convention expressly provides for the identification elements we set forth above. It does so in mandatory terms. *See* First Geneva Convention Commentary 219. Neither the Convention nor the commentary provide for any other means of establishing that status.

The Geneva Conventions and their commentary provide a roadmap for the establishment of protected status. As the district court found, Al Warafi was serving as part of the Taliban. The Taliban has not followed the roadmap set forth in the Conventions, and it has not carried Al Warafi to the

destination. We hold that without the mandatory indicia of status, Al Warafi has not carried his burden of proving that he qualified "as permanent medical personnel."

While not necessary to its decision, the district court, in addition to its legal conclusion that the identification requirements of Article 24 constitute a *sine qua non* for protected status under Article 24, found as fact that petitioner had been stationed in a combat role before serving in a clinic. The court further found that "[p]etitioner was captured with a weapon." 821 F. Supp. 2d at 49. It reiterated its earlier finding that it was more likely than not that Al Warafi was part of the Taliban. The court further reiterated the well-established law that in habeas proceedings such as this, the government bears the burden "to prove that petitioner's detention is lawful." That is, the government must prove "'that petitioner more likely than not was part of the Taliban' at the time of his capture." 821 F. Supp. 2d at 53 (citing *Al-Bihani v. Obama*, 590 F.3d 866, 872 (D.C. Cir. 2010)). The court renewed its conclusion that the government had met that burden.

The court recalled that: "'[O]nce the government puts forth credible evidence that the habeas petitioner meets the enemy-combatant criteria, the onus could shift to the petitioner to rebut that evidence with more persuasive evidence that he falls outside the criteria.'" 821 F. Supp. 2d at 53–54 (quoting *Hamdi v. Rumsfeld*, 542 U.S. 507, 534 (2004) (plurality opinion)).

In the end, the question of whether Al Warafi has met his burden of establishing his status as permanent medical personnel entitled to protection under the First Geneva Convention is one of fact, or at least a mixed question of fact and law. Although the district court believed, and we agree, that military personnel without appropriate display of distinctive emblems can never so establish, it also found facts—*e.g.*, the prior combat deployment

—inconsistent with that role. These are findings of fact reviewed by us for clear error. *See, e.g.*, *American Soc. for Prevention of Cruelty to Animals v. Feld Entertainment, Inc.*, 659 F.3d 13, 19 (D.C. Cir. 2011). The evidence in the record gives credence to the view that Al Warafi is unable to provide the proof required under the Convention because he was not a medic.

We would further emphasize that given the strong mandatory language of the Convention, we affirm the district court's decision. As the district court stated:

> Nothing prevents parties like the Taliban from providing medical personnel with the identification materials mandated by Article 40. But until they do so, their medical personnel will lack the means by which they can prove their entitlement to Article 24's protections.

821 F. Supp. 2d at 56. Without compliance with the requirements of the Geneva Conventions, the Taliban's personnel are not entitled to the protection of the Convention.[1]

## CONCLUSION

Because appellant has not established that he was "medical personnel" as defined in the Geneva Conventions, and because all other issues have been determined in the previous proceedings, we affirm the judgment of the district court denying the petition for writ of habeas corpus.

*So ordered.*

---

[1] We note that we are not addressing the conceivable circumstance in which a detainee claiming medical personnel status offers evidence that he had been issued the necessary identifiers but was deprived of them by his captors or inadvertence.

BROWN, J., concurring: Emphasizing the Geneva Convention's "strong mandatory language," Op. 8, the panel's opinion rejected Al Warafi's proposed "functional" test in favor of the District Court's "legal conclusion that the identification requirements of Article 24 constitute a *sine qua non* for protected status under Article 24," Op. 7. "Without compliance with the requirements of the Geneva Conventions," we concluded, "the Taliban's personnel are not entitled to the protection of the Convention." Op. 8. I write separately only to draw out the unstated significance of our holding.

In *Hamdan v. Rumsfeld*, 548 U.S. 557 (2006), the Court interpreted Common Article 3 — so-called because it appears in all four Geneva Conventions — to "afford[] some minimal protection[] falling short of full protection under the Conventions" to members of Al Qaeda, *id.* at 631, "a transnational terrorist organization whose actions and actors do not fit existing legal norms and sanctions," Fionnuala Ní Aoláin, Hamdan *and Common Article 3: Did the Supreme Court Get It Right?*, 91 MINN. L. REV. 1523, 1548 (2007). While it is not clear that the text and purpose of Common Article 3 will bear the weight the Supreme Court assigns to it, that question is now one for the academy, *see, e.g.*, Ingrid Detter, *The Law of War and Illegal Combatants*, 75 GEO. WASH. L. REV. 1049, 1079–86 (2007), given we are duty-bound to apply *Hamdan* in a manner consistent with its holding.

How *Hamdan* translates to present facts, however, may not be obvious. This case differs from the majority of detainee cases to have come before this court in one very significant way: the protections invoked emanate not from Common Article 3, but a specific, highly intertwined suite of Articles in the First Geneva Convention. Does *Hamdan*'s atextual and quixotic reading of the Common Article, we thus ask, provide a coherent framework for addressing and applying the

Convention's supplemental protections to the present detainee context? This point was certainly not lost on Al Warafi. In asking this court to forego the plain language of the Convention to adopt and apply a purely functional test to the "medic" status determination, Al Warafi pressed an interpretation divorced from the text that inures to the benefit of terrorists and other irregular forces. In other words, Al Warafi has effectively argued that the expansive interpretation of treaty language begun in *Hamdan* should now reverberate through every Article of the Geneva Convention — *all* protections, not just the minimum protections of Common Article 3, should be made accessible to terrorists and their ilk.[1]

*Hamdan*, of course, requires no such thing. The Court's analysis focused on the specific jurisdictional language of Common Article 3, *see Hamdan*, 548 U.S. at 630–31, and the Article's "important purpose," *id.* at 631 (observing that "the commentaries also make clear 'that the scope of application of the Article must be as wide as possible' "). This reasoning simply does not extend to Article 24 and the companion provisions.

And therein lies the true significance of today's holding: in determining how the Convention operates and to whose benefit, courts must run a discrete calculus for each Article

---

[1] There was a suggestion at oral argument that as the *de facto* government of Afghanistan, a signatory to the Geneva Convention, the Taliban should also be accorded signatory status. Because Al Warafi has failed to produce the requisite indicia of protected status, however, we need not reach the vexing questions whether Al Warafi was a member of a transnational terrorist organization or the armed forces of a High Contracting Party, and if the former, whether he is categorically barred from invoking the supplemental protections of Article 24.

(or related series of Articles) that considers the treaty's language, structure, history, and purpose. For all the reasons outlined in the District Court opinion, *see Al Warafi v. Obama*, 821 F. Supp. 2d 47 (D.D.C. 2011), I believe the court got it right in adopting a bright-line test. In addition to its "strong mandatory language," Op. 8, Article 24 reflects an intricate regulatory scheme that implicates a unique balancing of interests; imposes potentially burdensome affirmative obligations; attempts to remedy a particular historical wrong; and, among other things, both implicitly and explicitly recognizes the role that formal military corps must play on *both* sides of the repatriation. Compliance, it follows, is a necessary condition to invoke Article 24 protections. *Hamdan*'s willingness to bend the Geneva Convention to favor those who openly disregard the laws of war need not extend past Common Article 3.