KAREN LECRAFT HENDERSON, Circuit Judge,
dissenting:
The Florida and Texas Bankers Associations (Associations) challenge a 2012 IRS regulation (2012 Rule) that requires banks to report the interest they pay to nonresident aliens — a regulation with major economic consequences for their member banks. Although their challenge raises several difficult questions, the Anti-Injunction Act (AIA) is not one of them. Supreme Court and Circuit precedent makes plain that the AIA does not apply here: the 2012 Rule is a tax-reporting requirement with a tax penalty attached and the AIA does not bar a challenge to a tax-reporting requirement, see Direct Mktg. Ass’n v. Brohl, — U.S. -, 135 S.Ct. 1124, 1131, 1133, 191 L.Ed.2d 97 (2015), to a regulation with a tax penalty attached, see Severt-Sky v. Holder, 661 F.3d 1, 8-10 (D.C.Cir.2011), abrogated on other grounds by Nat’l Fed’n of Indep. Bus. (NFIB) v. Sebelius, — U.S. -, 132 S.Ct. 2566, 183 L.Ed.2d 450 (2012), or to a tax-reporting requirement with a tax penalty attached, see Foodservice and Lodging Inst., Inc. v. Regan, 809 F.2d 842, 846 & n. 10 (D.C.Cir.1987). My colleagues conclude that a few sentences from NFIB somehow overrule our decisions in SevertrSky and Foodservice — a conclusion that drastically overreads NFIB and ignores *1073 the Supreme Court’s more recent pronouncement in Direct Marketing. Because the aforementioned decisions are neither distinguishable nor have they been overruled, we should follow them. See LaShawn A. v. Barry, 87 F.3d 1389, 1395 (D.C.Cir.1996) (en banc) (“One three-judge panel ... does not have the authority to overrule another three-judge panel of the court.”); Winston v. FERC, 587 F.3d 1133, 1135 (D.C.Cir.2009) (“Vertical stare decisis — both in letter and in spirit — is a critical aspect of our hierarchical Judiciary headed by ‘one supreme Court.’ ” (quoting U.S. Const., art. Ill, § 1)). Even if they did not bind us, I believe our precedent charts the right course here. According to my colleagues, no party can obtain preenforcement review of a regulation that is enforced by a tax penalty; instead, he must violate the regulation (ie., break the law) and be assessed a tax penalty before he can have his day in court. I shudder at the government-empowering consequences of their decision. I therefore dissent from my colleagues’ dismissal under the AIA. Given the significance and closeness of the merits, however, I withhold judgment on the Associations’ underlying challenge to the 2012 Rule.
I.
A.
The IRS enacted the 2012 Rule to narrow the “tax gap” — the difference between the taxes the IRS is owed and the taxes it actually collects. See generally Tax Gap for Tax Year 2006, IRS (Jan. 6, 2012), http://www.irs.gov/pub/newsroom/ overview_tax_gap_2006.pdf (estimating net tax gap of $385 billion per year, or 14% of total taxes owed). The 2012 Rule requires U.S. banks to report the interest they pay to non-resident aliens. See 26 C.F.R. §§ 1.6049 — 4(b)(5); 1.6049-8. Banks must report this information on Form 1042-S, id. § 1.6049-4(b)(5), and, if they fail to do so, they are subject to a tax penalty, see 26 U.S.C. § 6721. The IRS does not tax the interest earned by non-resident aliens. See id. §§ 871(i)(2)(A); 6049(b)(2)(B)(ii), (iv). Instead, it gives this information to other countries in exchange for information about the interest U.S. citizens earn in foreign banks. See 77 Fed.Reg. 23,391, 23,391 (Apr. 19, 2012). The IRS does tax that interest. See Form 1099-INT. The problem, however, is that the U.S. tax system is “based on a system of self-reporting” whereby “the Government depends upon the good faith and integrity of each potential taxpayer to disclose honestly all information relevant to tax liability.” United States v. Bisceglia, 420 U.S. 141, 145, 95 S.Ct. 915, 43 L.Ed.2d 88 (1975). Unfortunately, some Americans try to hide income by depositing it in foreign banks— the infamous “Swiss bank account.” See generally Sen. Carl Levin, Letter to Cmm’r Douglas H. Shulman at 2 (Apr. 12, 2011), reprinted in Supplemental Appendix 107 (estimating that offshore tax abuse causes annual loss of $100 billion in tax revenue). The idea behind the 2012 Rule is that, if U.S. citizens know foreign banks report the interest they earn abroad, they are more likely to self-report that income to the IRS. See FactCoalition, Comments and Request to Speak at Hearing (no date), reprinted in Appendix 403 (comparing 98.8% self-reporting rate for income subject to third-party reporting with 46% self-reporting rate for income that is not). Increased self-reporting, in turn, helps to narrow the tax gap.
U.S. banks do not like the 2012 Rule. They fear it will cause “capital flight” because non-resident aliens will no longer view the United States as a safe place to keep their money. See Compl. ¶ 37. The Associations filed suit on behalf of their members, challenging the 2012 Rule under the Administrative Procedure Act and the Regulatory Flexibility Act. Their challenge *1074 is pre-enforcement: none of their members has violated the 2012 Rule or been assessed a tax penalty. Instead, the Associations seek a judgment declaring the 2012 Rule invalid and an injunction preventing its enforcement.
The district court, after rejecting the Government’s standing and AIA objections, concluded that the 2012 Rule was validly promulgated and entered summary judgment accordingly. See Fla. Bankers Ass’n v. U.S. Dep’t of Treasury, 19 F.Supp.3d 111, 119-26 (D.D.C.2014). The Associations timely appealed. On appeal, the Government has renewed its standing[1] and AIA arguments.
B.
The AIA, with exceptions not relevant here, provides:
[N]o suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed.
26 U.S.C. § 7421(a).[2] The statute is intended to “permit the United States to assess and collect taxes alleged to be due without judicial intervention, and to require that the legal right to the disputed sums be determined in a suit for refund.” Enochs v. Williams Packing & Nav. Co., 370 U.S. 1, 7, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962). If taxpayers could challenge the validity of a tax and forego payment during the pendency of the lawsuit, it “would so interrupt the free flow of revenues as to jeopardize the Nation’s fiscal stability.” Cohen, 650 F.3d at 724; see also California v. Grace Brethren Church, 457 U.S. 393, 410, 102 S.Ct. 2498, 73 L.Ed.2d 93 (1982). Our cases assume the AIA is a “jurisdictional” bar. See Severt-Sky, 661 F.3d at 5 (citing Gardner v. United States, 211 F.3d 1305, 1311 (D.C.Cir.2000)).[3]
*1075 By its terms, the AIA applies if a suit (1) seeks to “restraint ] the assessment or collection” of (2) a “tax.” See Seven-Sky, 661 F.3d at 5, 8. The key, in most cases, is the first requirement. The word “restrain” modifies “assessment or collection,” not “tax.” See Direct Mktg., 135 S.Ct. at 1132. Accordingly, the AIA does not bar every suit that “will ultimately affect the money Treasury retains,” Cohen, 650 F.3d at 726, or that “w[ill] have a negative impact on [government] revenues,” Direct Mktg., 135 S.Ct. at 1133. Nor does it bar “any court action related to any phase of taxation.” Id. at 1132. Instead, “[t]he AIA has almost literal effect: It prohibits only those suits seeking to restrain the assessment or collection of taxes.” Cohen, 650 F.3d at 724 (quotation marks omitted). The Supreme Court gives the words “assessment” and “collection” technical definitions. “Assessment” is “the official recording of a taxpayer’s liability,” Direct Mktg., 135 S.Ct. at 1130 — “the trigger for levy and collection efforts,” Hibbs v. Winn, 542 U.S. 88, 90, 124 S.Ct. 2276, 159 L.Ed.2d 172 (2004). “Collection” refers to “the act of obtaining payment of taxes due.” Direct Mktg., 135 S.Ct. at 1130. The Court also defines “restrain” in a “narrow[]” sense. Id. at 1132. The word “captures only those orders that stop ... acts of ‘assessment [or] collection,’ ” not orders that “merely inhibit” them. Id. (first emphasis added). Taken together, the AIA does not apply unless a plaintiff seeks to stop the technical processes of assessment or .collection.
II.
The question here is whether the Associations’ pre-enforcement challenge to the 2012 Rule seeks to “restrain[ ] the assessment or collection” of taxes under the AIA. The 2012 Rule is a tax-reporting requirement: it requires U.S. banks to report information about nontaxable income (interest they pay to non-resident aliens) that the United States then exchanges for information about taxable income (interest foreign banks pay to U.S. citizens). As always, there is a penalty attached to noncompliance with a regulation: for the 2012 Rule, the penalty is denominated a tax. It is located in subchapter 68B of the Tax Code, see 26 U.S.C. § 6721, and all sub-chapter 68B penalties are “treated as taxes under ... the Anti-Injunction Act,” NFIB, 132 S.Ct. at 2583; see also 26 U.S.C. § 6671(a) (“any reference in [Title 26] to ‘tax’ ... shall be deemed also to refer to [subchapter 68B] penalties”). Thus, the precise sub-questions on appeal are whether the AIA bars a pre-enforcement challenge to a regulation that imposes (A) a tax-reporting requirement, (B) a tax penalty for non-compliance or (C) both. In my view, precedent answers all three questions in the negative.
A.
After oral argument in this case, the Supreme Court decided Direct Marketing Ass’n v. Brohl, which held that a challenge to a tax-reporting requirement was not barred by the TIA (and, by analogy, the AIA). See 135 S.Ct. at 1129, 1131, 1133. Direct Marketing involved a Colorado law *1076 that requires out-of-state retailers to, inter alia, report the names, addresses and purchases of their Colorado customers. See Colo.Rev.Stat. § 39-21-112(3.5)(d)(II)(A); 1 Colo.Code Regs. § 201-1:39-21-112.3.5(4). Non-compliant retailers are subject to a penalty. See Colo.Rev.Stat. § 39-21-112(3.5)(d)(III)(A); 1 Colo.Code Regs. § 201-1:39-21-l 12.3.5(3)(d). Like the 2012 Rule, the Colorado law is intended to encourage self-reporting: by requiring third-party reporting by retailers, Colorado sought to encourage its citizens to pay sales taxes on the goods they purchase from the Internet. See Direct Mktg., 135 S.Ct. at 1127-28. A retailers’ association brought a pre-enforcement challenge to the Colorado reporting requirement, seeking declaratory and injunctive relief. See Direct Mktg. Ass’n v. Huber, No. 10-cv-01546, 2012 WL 1079175, at *2 (D.Colo. Mar. 30, 2012).
The Supreme Court unanimously rejected the TIA defense. See Direct Mktg., 135 S.Ct. at 1131; id. at 1134 (Kennedy, J., concurring); id. at 1136 (Ginsburg, J., concurring). A challenge to a tax-reporting requirement, the Court explained, does not “restrain” the “assessment ... or collection” of taxes. Id. at 1131, 1133 (majority op.). The act of reporting occurs before the technical processes of “assessment” and “collection.” Id. at 1129-30 (“[T]he Federal Tax Code has long treated information gathering as a phase of tax administration procedure that occurs before assessment ... or collection. This step includes private reporting of information used to determine tax liability, including reports by third parties who do not owe the tax.” (citations omitted)). After a retailer files the required report, “the State still needs to take further action to assess the taxpayer’s use-tax liability and to collect payment from him.” Id. at 1131. Of course, an injunction invalidating Colorado’s law would “inhibit” the assessment or collection of taxes because “reporting requirements are intended to facilitate collection of taxes.” Id. at 1132; see also id. at 1131. “[B]ut the TIA is not keyed to all activities that may improve a State’s ability to assess and collect taxes.” Id. at 1131. According to the High Court, “[s]uch a rule would be inconsistent not only with the text of the statute, but also with our rule favoring clear boundaries in the interpretation of jurisdictional statutes.” Id.
Under Direct Marketing, the Associations’ challenge to the 2012 Rule is not barred by the ALA If successful, their challenge would at most “inhibit” the IRS’s ability to assess and collect taxes. Id. at 1132. If banks no longer need to report the interest they pay to non-resident aliens, then the United States can no longer exchange that information with other countries and will be less successful in taxing the interest earned by U.S. citizens abroad. But “private reporting of information” by banks is at least one step removed from the “assessment or collection” of taxes. Id. at 1129. In fact, this case is even further removed from assessment or collection than Direct Marketing: the information required to be reported here (interest paid to non-resident aliens) is not even taxable, unlike the information required to be reported in that case (purchases made by Colorado citizens). The IRS must take yet another step under the 2012 Rule — namely, exchanging the reported information with other countries and then auditing Americans keeping money abroad — before it can formally assess or collect any taxes. Thus, the Associa-* tions’ challenge to the 2012 Rule is not barred by the AIA.
B.
Both the Government and my colleagues distinguish Direct Marketing on the basis that the reporting requirement there is *1077 enforced by an ordinary penalty [4] whereas the 2012 Rule is enforced by a tax penalty. See Government’s 28(j) Letter at 2 (Mar. 9, 2015); Maj. Op. at 1068-69. But, according to our decision in Seven-Sky, the provision of a tax penalty does not bar a preenforcement challenge that would otherwise satisfy the AIA. See Seven-Sky, 661 F.3d at 8-10.
The “primary” issue in Seven-Sky was the constitutionality of the Affordable Care Act’s individual mandate, 26 U.S.C. § 5000A(a). Seven-Sky, 661 F.3d at 14. On that issue, we held that the mandate is a constitutional exercise of the Congress’s Commerce Clause power, id. at 14-20. Before so ruling, however, the Seven-Sky Court considered whether the challenge to the individual mandate is barred by the AIA. See id. at 5-14. We concluded it is not barred for two independent reasons. First, the challenge did not implicate a “tax” at all: the enforcement mechanism for the individual mandate, 26 U.S.C. § 5000A(b)-(c), is an ordinary penalty, not a tax. See Seven-Sky, 661 F.3d at 5-8, 10-12. Second, even assuming the penalty is a tax, the AIA would not apply because the plaintiffs challenged the mandate, not the tax. See id. at 8-10; see also id. at 41 (Kavanaugh, J., dissenting) (“[T]he majority opinion separately contends that the Anti-Injunction Act does not apply to plaintiffs’ suit even if the Affordable Care Act penalties are taxes for purposes of the Anti-Injunction Act.” (emphases in original)). The Seven-Sky plaintiffs did not seek to “restraint] the assessment or collection” of the penalty; rather, they “brought suit for the purpose of enjoining a regulatory command, the individual mandate, that ... imposes obligations independent of the [penalty].” Id. at 8 (majority op.) (emphasis added). Specifically:
The[ plaintiffs] seek injunctive and declaratory relief to prevent anyone from being subject to the mandate, irrespective of whether they intend to comply with it, and irrespective of the means Congress chooses to implement it. The harms appellants allege ... exist as a result of the mandate, not the penalty.... True, ... the penalty would be a serious financial burden. But that harm affects only the limited class of individuals who fail to comply when the mandate goes into effect.
Id. at 8-9. Our second holding in Seven-Sky is an alternative holding but it nonetheless binds us. See Ass’n of Battery Recyclers, Inc. v. EPA, 716 F.3d 667, 673 (D.C.Cir.2013) (“Where ... there are two grounds, upon either of which an appellate court may rest its decision, and it adopts both, the ruling on neither is obiter dictum, but each is the judgment of the court, and of equal validity with the other.” (quotation marks and brackets omitted)).
Under Seven-Sky’s alternative holding, the Associations’ challenge is not barred by the AIA, notwithstanding the 2012 Rule is enforced with a tax penalty. As in Seven-Sky, we must assess the Associations’ challenge by making “a careful inquiry into the remedy sought, the statutory *1078 basis for that remedy, and any implication the remedy may have on assessment and collection.” Z St., 791 F.3d at 30 (citing Seven-Sky, 661 F.3d at 10). Here, the Associations seek declaratory and injunctive relief from the regulatory requirement that their members report the interest earned by non-resident aliens, 26 C.F.R. §§ 1.6049 — 4(b)(5); 1.6049-8, not the tax penalty for failing to comply with that requirement, 26 U.S.C. § 6721. The “harms [they] allege” — mainly, capital flight — “exist as a result of the [reporting requirement], not the penalty.” Seven-Sky, 661 F.3d at 9. The Associations challenge the 2012 Rule “irrespective of whether they intend to comply with it, and irrespective of the means Congress chooses to implement it.” Id. at 8-9. Moreover, their challenge comes before enforcement: none of their members has been assessed a tax penalty and, thus, they do not seek to “restraint]” the “assessment” — much less “collection” — of a tax. See Direct Mktg., 135 S.Ct. at 1131, 1133; Seven-Sky, 661 F.3d at 10.
Granted, if the Associations succeed, the IRS will never collect any tax penalties under the 2012 Rule because there will be no Rule for the banks to violate. This argument, however, applies with equal force to the challenge in Seven-Sky but we allowed that challenge to proceed. Indeed, like the Seven-Sky suit, the Associations’ challenge hardly implicates the purpose of the AIA: “protecting] the Government’s ability to collect a consistent stream of revenue.” NFIB, 132 S.Ct. at 2582. A tax penalty is meant to deter violations of the underlying regulatory requirement: if the penalty is avoided- — -and presumably this is the Government’s intent — then individuals will have complied with the regulation and the IRS will collect zero revenue. See Seven-Sky, 661 F.3d at 6 (“[T]he aim of the shared responsibility payment is to encourage everyone to purchase insurance; the goal is universal coverage, not revenues from penalties.”). A tax penalty like the one attached to the 2012 Rule is “unrelated to the protection of the revenues,” a point that further demonstrates why this suit is not barred by the AIA. Id. at 13-14 (quoting Bob Jones Univ. v. Simon, 416 U.S. 725, 740, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974)).
My colleagues — relying primarily on Alexander v. “Americans United” Inc., 416 U.S. 752, 94 S.Ct. 2053, 40 L.Ed.2d 518 (1974), and Bob Jones, 416 U.S. 725, 94 S.Ct. 2038 — contend that “plaintiffs cannot evade the Anti-Injunction Act by purporting to challenge only the regulatory aspect of a regulatory tax.” Maj. Op. 1070. But this same argument was made, see Seven-Sky, 661 F.3d at 42-43 (Kavanaugh, J., dissenting) (“Bob Jones and Americans United ... mean ... [t]he Anti-Injunction Act cannot be evaded by characterizing the suit as a challenge only to the regulatory aspect of a tax.”), and rejected, see id. at 9-10 (majority op.), in Seven-Sky. See also Z St., 791 F.3d at 30 (rejecting argument “that Bob Jones and Americans United require a broad approach to what constitutes prohibited tax litigation” (quotation marks omitted)). According to the Seven-Sky majority, Americans United and Bob Jones are only “superficially similar” to a case like this one. 661 F.3d at 9. Those cases involved challenges to the revocation of the respective organizations’ tax-exempt status — challenges that “are inextricably linked to the assessment and collection of taxes.” Id. at 10 (emphasis in original). The organizations’ suits were “defeated by [their] own pleadings, since the only injuries plaintiffs identified involved tax liability.” Id. (emphasis in original); see also Z St., 791 F.3d at 28-29. This distinction is “crucial.” Seven-Sky, 661 F.3d at 10. Here, the Associations do not challenge anyone’s tax-exempt status and their pleadings identify injuries other *1079 than tax liability {e.g., capital flight). According to Seven-Sky, “[i]t does not follow from [“Americans United ” and Bob Jones ] that plaintiffs can never bring a pre-enforcement challenge to a discrete regulatory requirement” that has a tax penalty attached to it. Id.[5]
The majority also contends that the Supreme Court’s decision in NFIB overruled our alternative holding in Seven-Sky. See Maj. Op. 1072 n. 3. NFIB did overrule Seven-Sky’s Commerce Clause holding. See NFIB, 132 S.Ct. at 2585-93 (opinion of Roberts, C.J.); id. at 2644-50 (Scalia, Kennedy, Thomas, Alito, JJ., dissenting). But the Supreme Court did not overrule our AIA analysis. On the contrary, it agreed with our first holding that the enforcement mechanism for the individual mandate is a penalty, not a tax. See id. at 2582-84 (majority op.). And it did not reach our alternative holding. Because the NFIB Court concluded that the penalty is not a “tax” in the first place, it had no occasion to decide whether, even assuming the penalty is a “tax,” the plaintiffs’ suit did not seek to “restraint] the assessment or collection” thereof. Thus, we must continue to follow Seven-Sky. See Battery Recyclers, 716 F.3d at 673. A subsequent Supreme Court decision does not overrule Circuit precedent unless it “eviscerates” it, Nat’l Inst. of Military Justice v. DOD, 512 F.3d 677, 684 n. 7 (D.C.Cir.2008) (brackets omitted) — something that does not occur if the High Court is silent or “never ultimately resolvefs]” the issue. United States v. Williams, 194 F.3d 100, 107 (D.C.Cir.1999), abrogated on other grounds by Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); Bartlett v. Bowen, 816 F.2d 695, 719 (D.C.Cir.1987) (Bork, J., dissenting) (“Lower courts ... do not usually infer silent overruling when the Supreme Court gives no explicit indication that it has addressed an issue and that such overruling is intended.”); cf. Helmerich & Payne Int’l Drilling Co. v. Bolivarian Republic of Venezuela, 784 F.3d 804, 815 (D.C.Cir.2015) (even “[w]hen the Supreme Court vacates a judgment of this court,” holdings not addressed “continue[] to have precedential weight” (emphasis added)).
The majority points to two passages from NFIB that purportedly overrule Seven-Sky’s alternative holding. In the first passage, the Supreme Court observed that “[penalties -in subchapter 68B are thus treated as taxes under Title 26, which includes the Anti-Injunction Act.” NFIB, 132 S.Ct. at 2583. But the fact that a subchapter 68B penalty — like the one attached to the 2012 Rule — is a “tax” under the AIA does not resolve this case. Even if a “tax” is involved, the AIA does not apply unless the suit seeks to “restraint] the assessment or collection” thereof. 26 U.S.C. § 7421(a); see Direct Mktg., 135 S.Ct. at 1132 (TIA does not bar “any court action related to any phase of taxation”); Z St., 791 F.3d at 29 (“[W]e [have] rejected the IRS’s view of ‘a world in which no challenge to its actions is ever outside the closed loop of its taxing authority.’ ’’ (quoting Cohen, 650 F.3d at 726)). Indeed, the entire point of Seven-Sky’s alternative holding was to make clear that, even assuming the penalty is a tax, the AIA still would not apply. In the second NFIB pas *1080 sage, the Supreme Court concluded that “[t]he Affordable Care Act does not require that the penalty for failing to comply with the individual mandate be treated as a tax for purposes of the Anti-Injunction Act. The Anti-Injunction Act therefore does not apply to this suit, and we may proceed to the merits.” NFIB, 132 S.Ct. at 2584. The majority reads the Court’s statement (“If a penalty is not a tax, then the AIA does not apply”) to mean its inverse (“If a penalty is a tax, then the AIA applies”). This reasoning does not work as a matter of logic. See New England Power Generators Ass’n, Inc. v. FERC, 707 F.3d 364, 370 & n. 3 (D.C.Cir.2013) (explaining “the logical fallacy [of] ‘denying the antecedent,’ ” where one assumes wrongly that —P —Q means P -» Q). Nor does it work as a matter of the AIA’s text. Again, although a suit that does not implicate any “tax” is not barred by the AIA, it does not follow that a suit implicating a tax is necessarily barred: the suit may nonetheless not seek to “restraint] the assessment or collection” of said tax. 26 U.S.C. § 7421(a); see Direct Mktg., 135 5.Ct. at 1132; Z St., 791 F.3d at 29-30.
Further, our alternative holding in Severtr-Sky was the subject of at least eighty pages of briefing in NFIB[6] If the Supreme Court meant to overrule it, the two passages the majority identifies would be an awfully cryptic way to do so. Indeed, even after NFIB, our sister circuits have continued to rely on reasoning similar to Seven-Sky’s alternative holding. See, e.g., Korte v. Sebelius, 735 F.3d 654, 669 (7th Cir.2013) (“The Anti-Injunction Act does not apply [to] ... suits [that] seek relief from a regulatory mandate that exists separate and apart from the assessment or collection of taxes.”), cert. denied, — U.S. -, 134 S.Ct. 2903, 189 L.Ed.2d 856 (2014); Hobby Lobby Stores, Inc. v. Sebelius, 723 F.3d 1114, 1127 (10th Cir.2013) (en banc) (“[T]he AIA does not apply to every lawsuit ‘tangentially related to taxes,’ and the corporations’ suit is not challenging the IRS’s ability to collect taxes. Rather, they seek to enjoin the enforcement of one HHS regulation.... ” (citation omitted)), aff'd, — U.S. -, 134 S.Ct. 2751, 189 L.Ed.2d 675 (2014). And, just this term, we treated Seven-Sky as good law. See Z St., 791 F.3d at 30-31.[7]
*1081 c.
To recap, precedent makes plain that neither a pre-enforcement challenge to a tax-reporting requirement nor a pre-enforcement challenge to a regulation enforced by a tax penalty is barred by the AIA. See Direct Mktg., 135 S.Ct. at 1131, 1133; Seven-Sky, 661 F.3d at 8-10. Granted, this case combines the two: the 2012 Rule is a tax-reporting requirement enforced by a tax penalty. Yet, for the AIA bar, the combination of two insufficient conditions does not equal a sufficient one. Our task is to interpret and apply the text of the AIA. The text does not impose a balancing test, whereby a suit becomes barred once it is sufficiently “related to” taxes or sufficiently, important to the IRS. See Direct Mktg., 135 S.Ct. at 1133 (rejecting “a vague and obscure boundary” because it “would result in both needless litigation and uncalled-for dismissal, all in the name of a jurisdictional statute meant to protect [government] resources” (quotation marks and citation omitted)). Instead, the AIA articulates a bright-line rule: the statute bars only those suits that “restraint ]” (defined narrowly) the “assessment or collection” (defined narrowly) of taxes. See id. at 1130-33. We know that tax-reporting requirements do not implicate “assessment or collection,” see id. at 1131, and that attaching a tax penalty to a regulation that does not implicate “assessment or collection” does not trigger the AIA, see Seven-Sky, 661 F.3d at 8-10. That is all we need to know to decide this case.
In any event, this case is not one of first impression. As the district court recognized, see 19 F.Supp.3d at 121, we held in Foodservice that a tax-reporting requirement enforced by a tax penalty is not barred by the AIA. See Foodservice, 809 F.2d at 846 & n. 10. That case involved a tip-reporting requirement the IRS imposes on restaurants. See 26 C.F.R. § 31.6053-3(a)(1)(v); see also 26 U.S.C. § 6053(c)(1)(C). Wait staff is legally required to pay taxes on its tips. See 26 U.S.C. §§ 3121(q); 3401(f); 3231(e)(3). A waiter must report his tips to the restaurant, id. § 6053(a), and the restaurant withholds the appropriate amount of taxes from his paycheck, id. § 3402(k). Underreporting of tip income, however, is all too common. See S.Rep. No. 97-494 at 251 (1982) (“84 percent of the taxes on tip income is not paid. The only type of income with a lower compliance rate is illegal income____”); United States v. Fior D’ltalia, Inc., 536 U.S. 238, 253, 122 S.Ct. 2117, 153 L.Ed.2d 280 (Souter, J., dissenting) (2002) (“many employees report less tip income than they receive”). To combat this problem, the Congress enacted section 314 of the Tax Equity and Fiscal Responsibility Act of 1982, see Pub.L. No. 97-248, § 314, 96 Stat. 324, 603-05, which statute the IRS implemented with regulations, see 48 Fed.Reg. 36, 807 (Aug. 15, 1983). A waiter must accurately report his tips or the restaurant deducts an additional sum (a percentage of the restaurant’s gross receipts) from his paycheck. See 26 U.S.C. § 6053(c)(3); 26 C.F.R. § 31.6053-3(d)-(f). Section 314 also imposes a reporting requirement: the restaurant must file an annual return documenting' the total amount of tips its employees earned. See 26 U.S.C. § 6053(c)(1)(C); 26 C.F.R. *1082 § 31.6053-3(a)(1)(v). The tip-reporting requirement is enforced with a tax penalty. See 26 U.S.C. § 6721. In Foodservice, a trade association of restaurants mounted a pre-enforcement challenge to the reporting requirement, alleging that it violated the Administrative Procedure Act and requesting declaratory and injunctive relief. See Foodservice, 809 F.2d at 843.
We held that the trade association’s challenge to the reporting requirement was not barred by the AIA. See id. at 846.[8] Our reasoning was quite perfunctory: “On its face, the regulation does not relate to the assessment or collection of taxes.” Id. Nevertheless, we are bound to apply Food-service if it is factually indistinguishable from this case:
Stare decisis compels adherence to a prior factually indistinguishable decision of a controlling court. This principle assumes increased importance when the antecedent case involves construction of a statute. In its intra-circuit application, stare decisis demands that we abide by a recent decision of one panel of this court unless the panel has withdrawn the opinion or the court en banc has overruled it. This principle encourages uniformity in the application of legal standards, enhances predictability in decisionmaking, promotes the interests of. judicial efficiency and economy, and evinces respect for the efforts of earlier courts that have struggled to educe the appropriate legal norms.
Brewster v. CIR, 607 F.2d 1369, 1373-74 (D.C.Cir.1979) (citations omitted). And it is factually indistinguishable: both Food-service and this case involve a tax-reporting requirement enforced by a tax penalty.
The Government believes Foodservice is distinguishable because the tip-reporting requirement was not intended to produce “information ... about individual U.S. taxpayers” the IRS uses to collect more taxes. Appellee’s Br. 33-34. Not so. As we recognized in Foodservice, “the avowed purpose of [the tip-reporting requirement] was to assist the [IRS] in its examination of returns filed by tipped employees and to provide the Service with data from which it could target underreporting.” 809 F.2d at 846 n. 10 (citing H.R. REP. NO. 97-760 at 556 (1982) (Conf.Rep.)) (emphasis added) (alterations omitted); see also id. (“The information is necessary ... for both compliance purposes and the Congressionally mandated tip study provided for in section 314(c).... ” (emphasis added)). Like the 2012 Rule, the impetus for the tip-reporting requirement was to increase self-reporting: the IRS thought that waiters and waitresses would be more likely to report their tip income if they knew their employer reports the information in any event. See S.Rep. No. 97-494 at 251-52 (“Expanded information reporting on tip income will encourage better reporting of such income by its recipients and facilitate Internal Revenue Service efforts to increase compliance in this area.”).
The majority distinguishes Foodservice on the basis that the tip-reporting requirement there was enforced by a penalty, not a tax. See Maj. Op. 7-8. It is mistaken. The tip-reporting requirement is enforced with the exact tax penalty as the 2012 Rule: section 6721 of the Tax Code. See 26 U.S.C. § 6721(a) (imposing penalty for failure to file “information return”); id. § 6724(d)(l)(B)(xvi) (defining “information *1083 return” to include tip-reporting requirement at issue in Foodservice). Granted, the Congress attached the tax penalty to the tip-reporting requirement after oral argument in Foodservice (but three months before our decision). See Pub.L. No. 99-514, § 1501, 100 Stat.2085, 2732, 2735 (1986). Nevertheless, we presume the Foodservice Court was aware of — and factored in — the amendment. See United States v. Dixon, 650 F.3d 1080, 1084 (8th Cir.2011) (“[Defendant] asserts that it is unclear whether the district court was aware that [the law] was amended shortly before the hearing, but absent any indication to the contrary, we presume the district court knew the law and considered the provision in effect at the time of [its decision].”); Fed. Cement Tile Co. v. Comm’r, 338 F.2d 691, 694 (7th Cir.1964) (“we assume the Court was aware of th[e] legislative history”); see also Walton v. Arizona, 497 U.S. 639, 653, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990) (“[J]udges are presumed to know the law and to apply it in making their decisions.”), overruled on other grounds by Ring v. Arizona, 536 U.S. 584, 609, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). And the Foodservice Court’s silence is consistent with the conclusion we later drew in Sevenr-Sky — i.e., the inclusion of a tax penalty does not change the AIA analysis. See Seven-Sky, 661 F.3d at 8-10. Indeed, the Sevenr-Sky Court expressly relied on Foodservice to support its conclusion. See id. at 9 (“The.[AIA] ... has never been applied to bar suits brought to enjoin regulatory requirements that bear no relation to tax revenues or enforcement. Indeed, we have held that the Act does not apply to an IRS regulation that does not, by its terms, pertain to the assessment or collection of taxes.” (citing Foodservice, 809 F.2d at 846)).
In sum, Foodservice held that a tax-reporting requirement enforced by a tax penalty is not barred by the AIA and we should do the same here. See Brewster, 607 F.2d at 1373. Although Foodservice is short on legal reasoning and its holding broadly exempts regulations like the 2012 Rule from the AIA, we should follow it even if we believe it was wrongly decided, announced an overly broad rule or failed to consider all aspects of the problem. See LaShawn A, 87 F.3d at 1395 (“law-of-theeircuit doctrine ... precludes reconsideration of [a] decision ... even if the second panel believes the first was wrong”); Battery Recyclers, 716 F.3d at 673 (disposition of “identical claim” by earlier panel binds subsequent panel even if claim is “far better developed” in subsequent case). These principles ring especially true here as Foodservice’s holding — that a tax-reporting requirement enforced by a tax penalty “[o]n its face ... does not relate to the assessment or collection of taxes,” 809 F.2d at 846 — has been reaffirmed in subsequent decisions. The Supreme Court’s recent decision in Direct Marketing explains why tax-reporting requirements do not relate to the “assessment or collection” of taxes. See 135 S.Ct. at 1131. And, as mentioned above, Seven-Sky expressly relied on Foodservice to support its holding that challenges to regulations enforced by tax penalties are not barred by the AIA. See Seven-Sky, 661 F.3d at 9.
Departing from Foodservice would be particularly problematic in this case. If the AIA bars the Associations’ challenge, then a bank cannot obtain judicial review of the 2012 Rule unless it refuses to submit a Form 1042-S, incurs a tax penalty and initiates a refund suit. Yet, the “willful[ ]” failure to file a Form 1042-S is a misdemeanor punishable by a fine of $25,000 ($100,000 for corporations) or imprisonment. 26 U.S.C. § 7203. To require a would-be litigant to risk such consequences before obtaining judicial review would present serious constitutional concerns. See Ex parte Young, 209 U.S. 123, 148, 28 S.Ct. 441, 52 L.Ed. 714 (1908) *1084 (“[T]o impose upon a party ... the burden of obtaining a judicial decision ... (no prior hearing having ever been given) only upon the condition that, if unsuccessful, he must suffer imprisonment and pay fines ... is, in effect, to close up all approaches to the courts” and is “unconstitutional on [its] face”); Okla. Operating Co. v. Love, 252 U.S. 331, 336-37, 40 S.Ct. 338, 64 L.Ed. 596 (1920) (forcing party to violate regulation and trigger contempt proceeding in order to obtain judicial review violates due process); Catting v. Godard, 183 U.S. 79, 101-02, 22 S.Ct. 30, 46 L.Ed. 92 (1901) (“[W]hen the legislature, in an effort to prevent any inquiry of the validity of a particular [law], so burdens any challenge thereof in the courts that the party affected is necessarily constrained to submit rather than take the chances of the penalties imposed, then it becomes a serious question whether the party is not deprived of [due process].”). I do not believe we should interpret the AIA to mandate such a result. See Olsen v. DEA 878 F.2d 1458, 1461 (D.C.Cir.1989) (“We resist an interpretation dissonant with the cardinal principle that legislation should be construed, if fairly possible, to avoid a constitutional confrontation.” (quotation marks omitted)).
At the very least, such an approach makes for poor public policy. See Mobil Oil Corp. v. Att’y Gen. of Com. of Va., 940 F.2d 73, 75 (4th Cir.1991) (“Public policy should encourage a person aggrieved by laws he considers [illegal] to seek a declaratory judgment ..., all the while complying with the challenged law, rather than to deliberately break the law and take his chances in the ensuing suit or prosecution.”); cf. Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979) (plaintiffs “should not be required to await and undergo a criminal prosecution as the sole means of seeking rehef’); Gardner v. Toilet Goods Ass’n, 387 U.S. 167, 172, 87 S.Ct. 1526, 18 L.Ed.2d 704 (1967) (requiring litigants to “refuse to comply ... and test the regulations by defending against government criminal, seizure, or injunctive suits against them” is not “a satisfactory alternative to [pre-enforcement review]”). I doubt that the Congress intended the AIA to operate in this manner. Cf. Nat’l Rest. Ass’n v. Simon, 411 F.Supp. 993, 996 (D.D.C.1976) (Bryant, J.) (“[R]efusing to file the required information, and contesting a possible government assessment of a fine ... puts the plaintiffs in the untenable position of either complying, with no judicial review, or of defying the government’s interpretation of their legal obligations under the code, of being in essence a lawbreaker. The Court cannot imagine that the Congress intended such an anomalous result in a system which depends for its very existence on the principle of voluntary compliance.”), cited approvingly in Cohen, 650 F.3d at 723.
Accordingly, I would follow Direct Marketing, Seven-Sky and Foodservice and conclude that the AIA does not bar this litigation from going forward. I therefore respectfully dissent.

.Specifically, the Government contends that the Associations lack standing to raise a Regulatory Flexibility Act challenge. In my view, the Government is plainly incorrect. For Article III standing, the Associations have standing if one of their members would have standing. See Hunt v. Wash. State Apple Adver. Comm’n, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). Standing here is self-evident: banks are the "object” of the 2012 Rule and their injuries would be redressed if we granted the Associations’ requested relief (i.e., vacatur of the 2012 Rule). Lujan v. Defenders of Wildlife, 504 U.S. 555, 561-62, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The Government objects that the Associations never identified a member that qualifies as a "small” business under the judicial-review provision of the Regulatory Flexibility Act. See 5 U.S.C. § 611(a)(1). I read the Government’s objection as one aimed at statutory standing, not Article III standing. See Lexmark Int’l, Inc. v. Static Control Components, Inc.,- U.S. -, 134 S.Ct. 1377, 1387 & n. 4, 188 L.Ed.2d 392 (2014). In any event, the requirement is satisfied. The Associations have submitted sealed affidavits identifying specific member banks that are "small” businesses as that term was defined when this suit was filed. See 13 C.F.R. § 121.201 (2013) ("small” business includes commercial banks with $175 million of assets or less), amended by, 78 Fed.Reg. 37,409 (June 20, 2013). The Associations therefore have standing to raise a Regulatory Flexibility Act challenge to the 2012 Rule.

. The AIA governs suits for injunctive relief only. The Declaratory Judgment Act, however, also bars litigants from obtaining declaratory relief "with respect to Federal taxes.” 28 U.S.C. § 2201(a). We have interpreted the two statutes as "coterminous,” Cohen v. United States, 650 F.3d 717, 730 (D.C.Cir.2011) (en banc), so I will refer to the AIA only.
Likewise, some of the cases cited herein interpret the Tax Injunction Act (TIA), 28 U.S.C. § 1341 — the state-tax analog of the AIA. Nevertheless, the TIA cases are directly applicable because we “assumed that words used in both [the AIA and TIA] are generally used in the same way.” Z St. v. Koskinen, 791 F.3d 24, 31 (D.C.Cir.2015) (quoting Direct Mktg., 135 S.Ct. at 1129 (alteration omitted)).

. It may be high time to revisit this assumption. None of our cases has thoroughly analyzed whether the AIA is jurisdictional, particularly in light of the Supreme Court’s recent *1075 attempts to "bring some discipline to the use of the term 'jurisdiction.' " Sebelius v. Auburn Reg'l Med. Ctr., - U.S. -, 133 S.Ct. 817, 824, 184 L.Ed.2d 627 (2013) (some quotation marks omitted); see also, e.g., United States v. Kwai Fun Wong, - U.S. -, 135 S.Ct. 1625, 1631-38, 191 L.Ed.2d 533 (2015); Gonzalez v. Thaler, - U.S. -, 132 S.Ct. 641, 648-52, 181 L.Ed.2d 619 (2012); Henderson ex rel. Henderson v. Shinseki, 562 U.S. 428, 434, 131 S.Ct. 1197, 179 L.Ed.2d 159 (2011) (collecting cases). And there are good reasons to doubt the AIA’s jurisdictional status. See Hobby Lobby Stores, Inc. v. Sebelius, 723 F.3d 1114, 1158-59 (10th Cir.2013) (en banc) (Gorsuch, J., concurring).

. Both also simply assume that the penalty in Direct Marketing is not a tax. I would note, however, that the Supreme Court made no such determination nor relied on a tax-versus-penalty distinction. And whether a penalty is a tax under the TIA is not an entirely straightforward question. See Seven-Sky, 661 F.3d at 8 n. 15 ("Courts do not defer to the labels states — as opposed to Congress — bestow on [penalties], because the meaning of a 'tax’ under the Tax Injunction Act is a question of federal, not state, law.”); Travelers Ins. Co. v. Cuomo, 14 F.3d 708, 713 (2d Cir.1993) (“there is no bright line between [penalties] that are taxes and those that are not” under the TIA), rev'd on other grounds, 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995). Nevertheless, because the distinction should not matter in this case, I too will assume that the penalty in Direct Marketing is not a tax.

. My colleagues also rely on Bailey v. George, 259 U.S. 16, 42 S.Ct. 419, 66 L.Ed. 816 (1922), for the proposition that the AIA blocks a suit that "target[s] the regulatory aspect of [a] tax.” Maj. Op. 1070. This argument was made in Seven-Sky, see 661 F.3d at 43-44 (Kavanaugh, J., dissenting), but failed. In any event, Bailey is plainly distinguishable. The plaintiffs there challenged the constitutionality of a tax — -indeed, the tax had already been assessed and the plaintiffs sought an injunction barring its collection, see 259 U.S. at 19, 42 S.Ct. 419 — whereas the plaintiffs here challenge a reporting requirement (not a tax) and bring their challenge pre-enforcement (no tax has been assessed).

. See Court-Appointed Amicus Curiae Br. at 44-48; Court-Appointed Amicus Curiae Reply Br. at 20-22; Pet’r’s Br. (AIA) at 38-41; Pet’r’s Reply Br. (AIA) at 10-15; State Resp’ts’ Br. (AIA) at 43-48; State Resp’ts’ Reply Br. (AIA) at 17-21; Private Resp'ts' Br (AIA) at 9-25; Private Resp'ts’ Reply Br (AIA) at 10-24; Am. Center for Law & Justice Amicus Curiae Br. at 11-17; Center for Fair Admin. of Taxes Amicus Curiae Br. at 26-27; State Chambers of Commerce and Related Orgs. Amicus Curiae Br. at 4-5, 8-12. [Briefs available at http://www.scotusblog.com/casefiles/cases/u-s-department-of-healthandhuman-services-v-florida/]
Indeed, the Government in NFIB conceded that Seven-Sky’s first holding — that the AIA does not bar the plaintiffs’ challenge because the penalty is not a “tax”' — is correct. See Pet'r's Br. (AIA) at 20-38. By contrast, the Government actively argued against Seven-Sky’s alternative holding. See id. at 38-41; Pet’r's Reply Br. (AIA) at 10-15. If the NFIB Court meant to address both of our holdings (as opposed to the first holding only), it undoubtedly would have spoken more precisely, given the Government’s differing positions. See Barenblatt v. United States, 252 F.2d 129, 131 (D.C.Cir.1958) (en banc) (Supreme Court does not leave issues "so vital” to the Government “to inference or interpretation”), aff'd, 360 U.S. 109, 79 S.Ct. 1081, 3 L.Ed.2d 1115 (1959).

. Remarkably, my colleagues contend that Seven-Sky had no such alternative holding. See Maj.' Op. 1072 n. 3; Concur. Op. 1072. I am frankly unsure how they read pages 8-10 of that opinion. That portion of Seven-Sky comes after the Court’s discussion of why the penalty is not a "tax” and is set off on both sides by asterisks. See Seven-Sky, 661 F.3d at 8-10. At the time, the author of the majority opinion here recognized that the Court's analysis was an alternative holding. See id. at 41 (Kavanaugh, J., dissenting) (”[T]he majority *1081 opinion separately contends that the Anti-Injunction Act does not apply to plaintiffs' suit even if the Affordable Care Act penalties are taxes for purposes of the Anti-Injunction Act.” (first emphasis added)). If any doubt remained, the cited portion of Seven-Sky considers and rejects all of the arguments that my colleagues make here — a surefire sign that it is relevant to our decision today. And, even absent Seven-Sky, my colleagues' decision is refuted by the Supreme Court’s narrow definitions of "restrain,” "assessment” and "collection” in Direct Marketing and our decision in Foodservice. See infra Part II.C.

. The Foodservice Court did hold, however, that two of the trade association’s challenges were barred by the AIA. See Foodservice, 809 F.2d at 844. We held that, unlike the reporting requirement, the challenged regulations, 26 C.F.R. §§ 31.6053-3(0(1); 31.6053-3T(j)(9) (1986), "plainly concern the assessment or collection of federal taxes” because they govern how restaurants allocate tip income to employees in order to assess their tax liability. See Foodservice, 809 F.2d at 843-44.