# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

**No. 20-1514**

**September Term, 2021**

FILED ON: NOVEMBER 30, 2021

CHINESE VOICE OF GOLDEN CITY,
>                    APPELLANT

v.

FEDERAL COMMUNICATIONS COMMISSION,
>                    APPELLEE

SILVER STATE BROADCASTING, LLC,
>                    INTERVENOR

———

Appeal of an Order of the
Federal Communications Commission

———

Before: TATEL, PILLARD and WILKINS, *Circuit Judges*.

## **J U D G M E N T**

This appeal from an order of the Federal Communications Commission was considered on the basis of the appendix submitted by the parties and the presentations in the briefs. *See* Fed. R. App. P. 34(a)(2); D.C. Cir. R. 34(j). The court has afforded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. Cir. R. 36(d). For the reasons stated below, it is

**ORDERED AND ADJUDGED** that the petition for review be **DENIED**.

Appellant Chinese Voice of Golden City moved its radio broadcast tower to a site two miles away from where it was licensed to operate. The FCC held that Chinese Voice's failure to broadcast from its licensed site for twelve consecutive months terminated the license as a matter of law. Chinese Voice challenges the Commission's order as arbitrary and capricious. Because the decision is reasonable and reasonably explained, we deny the petition.

If a broadcast station "fails to transmit broadcast signals for any consecutive 12-month period," its license automatically expires at the end of the twelve months. 47 U.S.C. § 312(g). In

*Eagle Broadcasting Group v. FCC*, 563 F.3d 543 (D.C. Cir. 2009), we affirmed the FCC's longstanding rule that transmissions from an unauthorized location do not constitute "broadcast signals" for purposes of § 312(g)—indeed, although deference to the Commission sufficed to reject Eagle's challenge, we suggested the statute required the FCC's approach. *Id.* at 553 ("[I]t strains credulity to suggest that the reference to 'broadcast signals' in § 312(g) includes *unauthorized* and *unlicensed* transmissions.") (emphasis in original). We recently reaffirmed that analysis by judgment. *See Kingdom of God, Inc. v. FCC*, 719 F. App'x 19, 20 (D.C. Cir. 2018) (Mem.).

A straightforward application of *Eagle Broadcasting* resolves this appeal. Chinese Voice by its own admission broadcast from an unauthorized location more than two miles from its licensed site for about fifteen months, from January 2018 to May 2019. *See* J.A. 11, ¶¶ 8-10 (statement of Chinese Voice's President). Its transmissions during that time thus did not count as "broadcast signals" for purposes of § 312(g). *Eagle Broadcasting*, 563 F.3d at 552-53. Because Chinese Voice failed to transmit broadcast signals for a consecutive twelve-month period, it forfeited its license.

Chinese Voice offers no ground for distinguishing *Eagle Broadcasting*. Its principal argument is that *Eagle Broadcasting* was wrongly decided and we should reverse it. *See* Pet'r Br. at 26-32; Reply Br. at 1-17. But that decision binds us, *see LaShawn A. v. Barry*, 87 F.3d 1389, 1395 (D.C. Cir. 1996) (en banc), has been applied in other, similar circumstances, *see Kingdom of God*, 719 F. App'x at 20, and appears to be correct.

Chinese Voice also focuses on a 256-foot gap between its licensed broadcast location and the location it used before December 2017 and again after May 2019, which it argues is *de minimis*. That focus is misplaced. As both the Media Bureau's January 15, 2020, Opinion and the Full Commission's November 25, 2020, Opinion observed, Chinese Voice's deliberate fifteen-month broadcast from a location two miles away required the FCC to terminate the license regardless of whether Chinese Voice's other violation was *de minimis*. *See, e.g.*, J.A. 208 ("[T]he Station's license expired as a matter of law . . . because the station did not operate from an authorized facility from at least January 2018 until May 2019, the time it was operating at the East Charleston Boulevard Site [two miles away], regardless of its operations at the West Owens Avenue Site [256 feet away]."). Although the Media Bureau and Commission at times seem to have referenced a period of operation at the unauthorized site nearer the licensed location in calculating the expiration date, *see* J.A. 29, 59, 203, the reasoning and record establish that fifteen months of broadcasting from the site two miles away terminated the license by operation of law as of January 2019 at the latest, *see* J.A. 62, 208. In any event, Chinese Voice did not object to the Commission's specification of the date its license expired, but to the expiration holding itself. Chinese Voice's admitted and purposeful two-mile violation is a clear and sufficient basis on which to affirm the FCC's order.

Chinese Voice's other arguments also fail. First, we reject its claim that it should have been permitted to modify its license under 47 C.F.R. § 73.1690(c)(11). Chinese Voice argues that section 73.1690(c)(11), which allows *de minimis* license modification, applies here because it falls

under Subpart H: Rules Applicable to All Broadcast Stations. When it denied the modification request, however, the FCC pointed to the provision identifying rules applicable to low power FM stations like Chinese Voice, which does not include the modification provision Chinese Voice invokes. In any event, Chinese Voice tried to modify its license only in August 2019—months after that license had already expired. Chinese Voice by that point had no license to modify.

Second, the FCC reasonably declined to exercise its statutory discretion to reinstate Chinese Voice's license, either outright or by allowing Chinese Voice to file a new modification or construction permit application. The FCC has exercised such discretion "only in rare circumstances where a station was silent as the result of natural disasters or other compelling reasons beyond the licensee's control." J.A. 210 (quoting *Christian Broad. of E. Point, Inc.*, 30 FCC Rcd. 13975, 13976 (2015)); *V.I. Stereo Commc'ns Corp.*, 21 FCC Rcd. 14259, 14262 (2006) (exercising discretion following hurricane damage). Here, Chinese Voice's voluntary actions caused its violation. The Commission thus appropriately adhered to its policy. *See Kingdom of God*, 719 F. App'x at 20 (reasoning similarly).

Finally, the FCC reasonably required Chinese Voice to attach its Memorandum Opinion to future radio license applications. The Commission did not find that Chinese Voice had committed misrepresentation, but merely flagged that a future inquiry into possible misrepresentation might be warranted if Chinese Voice filed another application. J.A. 211. That choice was sensible given that Chinese Voice repeatedly obscured its purposeful fifteen-month relocation, including before this court. *See* Pet'r Br. at 14 ("The instant case to a large extent involves site construction issues."); *id.* at 42 ("To a large extent, the instant case involves site construction issues.").

For all these reasons, we conclude that the FCC's final order was reasonable and reasonably explained. We accordingly deny the petition.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or rehearing en banc. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41(a)(1).

**<u>Per Curiam</u>**

**FOR THE COURT:**
Mark J. Langer, Clerk

BY:   /s/
Daniel J. Reidy
Deputy Clerk